

**EXHIBIT A**

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SEBASTIAN GONZALEZ,

     Plaintiff,

v.

TCR SPORTS BROADCASTING HOLDING LLP, d/b/a/ Mid-Atlantic Sports Network; HYUNDAI MOTOR AMERICA, INC.; MERCEDES-BENZ USA, LLC; and JIFFY LUBE INTERNATIONAL, INC,

     Defendants.

Case No. _____

(JURY TRIAL DEMANDED)

(CLASS REPRESENTATION)

## COMPLAINT

Plaintiff Sebastian Gonzalez, individually and on behalf of all others similarly situated, complains and alleges as follows:

### NATURE OF ACTION

1. Plaintiff brings this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of TCR Sports Broadcasting Holding LLP d/b/a Mid-Atlantic Sports Network, ("MASN"), Hyundai Motor America, Inc. ("Hyundai"), Mercedes-Benz USA, LLC ("Mercedes") and Jiffy Lube International, Inc. ("Jiffy Lube") in transmitting advertising and telemarketing text messages to Plaintiff's cellular telephone and the cellular telephones of numerous others similarly situated using an automatic telephone dialing system ("ATDS") and

without anyone's prior express written consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## PARTIES

2.　　Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Miami Beach, Florida, and the subscriber and user of the cellular telephone number (786) 458-5841 (the "5841 Number").

3.　　Defendant MASN is, and at all times relevant hereto was, a limited liability partnership and a "person" as defined by 47 U.S.C. § 153(39).  MASN's primary corporate headquarters are in Baltimore, Maryland.

4.　　Defendant Hyundai is, and at all times relevant hereto was, a limited liability company and a "person" as defined by 47 U.S.C. § 153(39).  Hyundai's primary corporate headquarters are in Fountain Valley, California.

5.　　Defendant Mercedes is, and at all times relevant hereto was, a limited liability company and a "person" as defined by 47 U.S.C. § 153(39).  Mercedes's primary corporate headquarters are in Atlanta, Georgia.

6.　　Defendant Jiffy Lube is, and at all times relevant hereto was, a corporation and a "person" as defined by 47 U.S.C. § 153(39).  Jiffy Lube's primary corporate headquarters are in Houston, Texas.

7.　　Defendants Hyundai, Mercedes and Jiffy Lube are referred to herein collectively as the "Seller Defendants."

2

## JURISDICTION AND VENUE

8.     This is an action for statutory damages collectively exceeding $15,000.00, exclusive of interest, costs and attorneys' fees, and for injunctive and declaratory relief.

9.     This Court has subject-matter jurisdiction over this action pursuant to Fla. Stat. §§ 26.012 and 86.011 and 47 U.S.C. § 227(b)(3).

10.     All Defendants are subject to personal jurisdiction in Florida under Fla. Stat. § 48.193 because they initiated and directed, or caused to be initiated and directed by their agent(s), telemarketing or advertising text messages into the state of Florida, via ATDS and without the requisite prior express written consent, in violation of the TCPA.

11.     Specifically, each Defendant initiated and directed, or caused to be initiated and directed by their agent(s), the transmission of unsolicited advertising or telemarketing SMS text messages to the 5841 Number, which bears a (786) area code that specifically corresponds to locations in Florida.  Plaintiff received such messages while residing in and physically present in Florida.  Defendants' products or services advertised or marketed in such messages are sold in Florida.

12.     Plaintiff's claims for violation of the TCPA against all Defendants, and the resulting injuries caused to Plaintiff by Defendants' advertising and telemarketing messages, including the invasion of Plaintiff's privacy, arose in substantial part from Defendants' direction of those messages into Florida.

13.    Venue is proper in Miami-Dade County, Florida under Fla. Stat. § 47.011 because Plaintiff's cause of action accrued and his injuries occurred in Miami-Dade County, Florida.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

14.    To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, inter alia, making any call, or sending any text message, to a wireless number via an ATDS absent an emergency or the prior express written consent of the party called.

15.    According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited absent the requisite consent because such transmissions are a greater nuisance than live solicitation calls, and receiving and addressing such calls and texts can be costly and inconvenient. The FCC has also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

16.    According to a recent study conducted by the Pew Research Center, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones." Indeed, one of the most prevalent bulk advertising and telemarketing methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.

4

17.   SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text messages are received virtually anywhere in the world.

18.   Unlike more conventional advertisements, advertising and telemarketing SMS text messages can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

19.   In 2013, in response to growing concern over unwanted advertisements and telemarketing material being sent to consumers via SMS text message, the FCC updated its rules on consent to require that companies obtain the **"prior express written consent"** of the recipient before using an ATDS to make any call or send any SMS text message that contains "advertising" or "telemarketing." *See* 47 C.F.R. 64.1200(£)(8).

20.   Further, it is well established that "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014); *accord Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) ("[T]he Federal Communications Commission has ruled that, under federal common-law principles

of agency, there is vicarious liability for TCPA violations.").

21.     Thus, under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Section 227(b), even if the seller did not physically dial the illegal call. *In re Joint Pet. filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 28 F.C.C. Rcd. 6574, 6588 (2013) ("2013 FCC Ruling").

22.     A seller is liable under Section 227(b) "when it has authorized a telemarketer to market its goods or services." *Id.* ¶ 47.

23.     Additionally, even in the absence of evidence of a formal contractual relationship between a seller and telemarketer, the seller may still be vicariously liable for a Section 227(b) violation under principles of apparent authority and ratification.  *Id.* ¶ 34.  Factors relevant to a finding of vicarious liability include:

    a.  Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information";

    b.  Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems";

    c.  Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark";

    d.  Whether "the seller approved, wrote or reviewed the outside entity's telemarketing scripts"; and

e. "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."

*Id.* ¶ 46.

24.    Called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. " *Id.* ¶ 46; *cf. id.* ¶ 47 ("[W]e stress that nothing in this order requires a consumer to provide proof — at the time it files its complaint — that the seller should be held vicariously liable for the offending call.").

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

25.    MASN is a television broadcast network that is owned and operated as a partnership between two Major League Baseball franchises: the Baltimore Orioles and Washington Nationals.

26.    MASN operates a free service that purports to provide subscribers with news information concerning the Orioles and Nationals, including updates of live baseball games of those teams, via SMS text message to subscribers' cellular telephone numbers.

27.    Specifically, MASN advertises its text message service on its website as offering fans the opportunity to "[g]et the latest Orioles and Nationals breaking news directly to your phone," and encourages individuals to "**[t]ext ORIOLES to 29292**

for Orioles alerts" and to "**text NATIONALS to 29292** for Nationals alerts[.]"[1]  The MASN website further tells visitors that "[t]he mobile program will provide sports score updates, sports schedule alerts and all sports alerts."

28.    The MASN website also affords visitors the opportunity to enroll in the MASN text message service via an online enrollment form, which  requires the submission of the visitor's mobile number and also requests the visitor's name and e-mail address.  The enrollment form also contains a checkbox alongside a sentence that states, in pertinent part: "I agree and consent to receiving text messages to this mobile phone number to receive Orioles and Nationals updates and breaking news from MASN sports."

29.    Although MASN's website also advises its users that certain terms and conditions apply and provides a link to access those terms and conditions, the link to the terms and conditions page directs individuals to a page stating "Page Not Found" and "Sorry, the page you are looking for has not been found."[2]

30.    MASN's website does not contain, and did not contain at any time relevant to this litigation, any statements informing Plaintiff or members of the proposed Class that, by enrolling in MASN's "updates and breaking news" service, MASN would also transmit to them SMS text messages advertising or marketing goods or services generally or those offered for sale by the Seller Defendants in

---

[1]    "Subscribe to MASN updates on your phone!", MASN, available at http://www.masnsports.com/masn-news-information/cellphoneupdates.html (last accessed Dec. 8, 2017).

[2]    "Page Not Found", Phizzle, available at http://www.phizzle.com/masn/ (last accessed Dec. 8, 2017).

particular. To the contrary, MASN's website specifically states that MASN would only send informational SMS text messages "as . . . described in this document," i.e., to "provide sports score updates, sports schedule alerts and all sports alerts."

31.     MASN's website fails to disclose to individuals, and did not disclose to Plaintiff or members of the proposed Class at any time relevant to this litigation, that MASN would use an ATDS to transmit its SMS text messages, including those SMS text messages advertising and telemarketing the Seller Defendants' goods and services.  In fact, the MASN website is bereft of any mention of MASN's use of an "automatic telephone dialing system" or an "automated" system or the acronym "ATDS."

32.     As it turned out, the statements on MASN's website describing its SMS text program were part of an elaborate "bait and switch" advertising campaign.

33.     Plaintiff took the "bait" on August 23, 2017. After visiting the MASN website and reading and relying on the above-mentioned statements concerning MASN's texting service, Plaintiff texted the keywords "Nationals" and "Orioles" to the SMS short code 29292 from the 5841 Number – for the sole purpose of receiving informational "updates and breaking news" concerning the Orioles and Nationals, as promised on the MASN website.

34.     The "switch" followed closely behind.  Soon after Plaintiff enrolled in MASN's text services on August 23, 2017, MASN began texting the 5841 Number not just information pertaining to the Nationals and Orioles but also advertising and telemarketing material pertaining to goods and services offered for sale by the Seller

Defendants.

35.   On August 25, 2017, MASN transmitted an unsolicited SMS text message to Plaintiff's 5841 Number stating, inter alia, "Mercedes-Benz C-Class, KBB's best buy award winner, click: www.masn.me/MB-C."

36.   The website www.masn.me/MB-C immediately re-directs to https://www.mbusa.com/mercedes/vehicles/class/class-C/bodystyle-SDN, which is a website owned and operated by Defendant Mercedes-Benz and which offers for sale goods and services sold by Defendant Mercedes-Benz.

37.   On August 30, 2017, September 12, 2017, and October 1, 2017, MASN transmitted three unsolicited SMS text messages (one each day) to Plaintiff's 5841 Number, each of which stated, inter alia, "Jiffy Lube a HR for your vehicle! Click for locations: www.masn.me/JIFFYDC."

38.   The website www.masn.me/JIFFYDC immediately re-directs to https://co-opwashingtonarea.jiffylube.com/locations, which is a website owned and operated by Defendant Jiffy Lube and which offers for sale goods and services sold by Defendant Jiffy Lube.

39.   On September 3, 2017,  MASN transmitted an unsolicited SMS text message to Plaintiff's 5841 Number stating, inter alia, "Hyundai Summer Clearance Event going on now, click: www.masn.me/HYUNDAI."  On September 12, 2017, MASN transmitted an unsolicited SMS text message to Plaintiff's 5841 Number stating, inter alia, "For great deals @ Hyundai Summer Clearance Sales Event: www.masn.me/HYUNDAI."

40.     The website www.masn.me/HYUNDAI immediately re-directs to https://www.buyhyundai.com, which is a website owned and operated by Defendant Hyundai and which offers for sale goods and services sold by Defendant Hyundai.

41.     MASN transmitted numerous additional unsolicited SMS text messages to Plaintiff's cellular telephone at the 5841 Number that likewise constituted advertisements or telemarketing.

42.     The 5841 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227 (b)(1)(A)(iii).

43.     The complained of SMS text messages to the 5841 Number constitute advertisements defined by 47 C.F.CR. § 64.1200(f)(1).

44.     The complained of SMS text messages to the 5841 Number constitute telemarketing defined by 47 C.F.CR. § 64.1200(f)(12).

45.     The source of each of the unsolicited SMS text message sent by MASN to the 5841 Number was "29292," which is an SMS short Code owned or leased by or on behalf of MASN or MASN's agent(s) or affiliate(s), and is used for operating MASN's text message service, including the sending of SMS text messages telemarketing and advertising the Seller Defendants' goods and services.

46.     All telephone contact by MASN and/or affiliates, subsidiaries, or agents of MASN to Plaintiff at the 5841 Number occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing SMS text messages were sent from "29292," which is a short code telephone numbers used to message consumers en masse, and because the

11

hardware and software used by MASN to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, en masse, in an automated fashion without human intervention.

47.     The complained of SMS text messages to the 5841 Number did not constitute calls made for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

48.     MASN's SMS text messages advertising and telemarketing the Seller Defendants' goods and services invaded Plaintiff's privacy, intruded upon his seclusion, and wasted his time by requiring him to delete the messages.

49.     MASN had the actual authority of each of the Seller Defendants to transmit SMS text messages advertising and telemarketing the products or services of the respective Seller Defendant, including each such SMS text message received by Plaintiff as set forth above.

50.     The complained of SMS text messages to the 5841 Number were the result of joint advertising and telemarketing campaigns between MASN and each of the Seller Defendants, designed to generate business for each of the Seller Defendants and money for MASN, paid by each of the Seller Defendants, as the agent of each of the Seller Defendants.

51.     MASN was authorized by each of the Seller Defendants to use, and MASN did in fact use, each of the Seller Defendants' names in its text messages described above.

52.     MASN was authorized by each of the Seller Defendants to advertise and

telemarket, and MASN did in fact advertise and telemarket, each of the Seller Defendants' goods or services in its text messages described above.

53.     Moreover, because the text messages advertising and telemarketing the Seller Defendants' products and services re-directed directly to the Seller Defendants' websites, Plaintiff reasonably believed that MASN had authority to act as the agent of each of the Seller Defendants in sending those telemarketing and advertising SMS text messages.

54.     Each Seller Defendant had control over the content of the SMS text messages advertising and telemarketing its products or services that were transmitted by MASN, as described above.

55.     Each Seller Defendant had control over the timing and frequency of and MASN's transmission of the SMS text messages advertising and telemarketing its products or services as described above.

56.     The hyperlinks in the SMS text messages directing to the Mercedes-Benz, Jiffy Lube and Hyundai websites do not contain any referral code in the respective URLs indicating MASN as the source of the visitor to those websites, thus demonstrating that MASN, in telemarketing and advertising for sale the products and services of the Seller Defendants, was acting at the direction, oversight and control of the Seller Defendants pursuant to a prior agreement (as opposed to without the knowledge of the Seller Defendants, in which case it would tend to suggest that MASN had sent the messages for a referral fee without the Seller Defendants' knowledge).

57. MASN had the apparent authority of each of the Seller Defendants to transmit SMS text messages advertising and telemarketing the products or services of the respective Seller Defendant, including each such SMS text message received by Plaintiff as set forth above.

58. Each of the Seller Defendants knew about the advertising and telemarketing texts that are the subject of this case both prior to and after the transmission of such messages, but took and have taken nonexistent or insufficient steps to prevent the transmission of such texts by MASN. Instead, both MASN and each of the Seller Defendants willfully enjoy the benefits of such texts.

59. On information and belief:

a. Each of the Seller Defendants has the contractual right to control the text message marketing activities of MASN alleged herein;

b. MASN has the right to use each of the Seller Defendants' trade names, trademarks and service marks in connection with the text message marketing alleged herein;

c. MASN has the right to use an ATDS within the meaning of the TCPA to communicate with individuals such as Plaintiff;

d. Each of the Seller Defendants had actual knowledge of, and had the right to write and review, the content of the MASN website(s) that contains various false statements and disclosures to consumers concerning the text marketing activities of MASN alleged herein; and

e. Each of the Seller Defendants has the right and the ability to "approve,

14

write or review, the telemarketing scripts of [MASN]," as discussed in the 2013 FCC Ruling.

60.     On information and belief, each of the Seller Defendants has profited financially from MASN's transmission of text messages advertising and telemarketing the products and services of each respective Seller Defendant.

61.     By knowingly failing to take any action to stop, and by accepting financial benefits from, MASN's text marketing activities alleged herein, each of the Seller Defendants ratified such conduct as its own, including without limitation MASN's use of an ATDS to transmit SMS text messages advertising and telemarketing the goods and services of each respective Seller Defendant without the prior express written consent of Plaintiff or any member of the Class.

## CLASS REPRESENTATION ALLEGATIONS

62.     Plaintiff bring this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Fla. R. Civ. P. 1.220(b)(3).   The "Classes" which Plaintiff seeks to represent are comprised of and defined as follows:

> All persons within the United States who received an SMS text message, sent by or on behalf of MASN or an affiliate, subsidiary, or agent of MASN, which contained a hyperlink directing the recipient to a website operated by Mercedes-Benz (referred to individually as the "Mercedes Class").

> All persons within the United States who received an SMS All persons within the United States who received an SMS text message, sent by or on behalf of MASN or an affiliate, subsidiary, or agent of MASN, which contained a hyperlink directing the recipient to a website operated by Hyundai (referred to individually as the "Hyundai Class").

15

All persons within the United States who received an SMS text message, sent by or on behalf of MASN or an affiliate, subsidiary, or agent of MASN, which contained a hyperlink directing the recipient to a website operated by Jiffy Lube (referred to individually as the "Jiffy Lube Class").

63.    Excluded from each of the Classes are any of the Defendants, any entity in which any Defendant has a controlling interest or which has a controlling interest of any of the Defendants, and any Defendant's legal representatives, assigns or successors.  Also excluded are any judge presiding over this case and any member of any judge's immediate family.  Members of one or more of the Classes are referred to as "Class Members."

64.    Plaintiff reserves the right to modify the definitions of the Classes (or add one or more subclass) after further discovery.

65.    Plaintiff and all Class Members have been impacted and harmed by the acts of MASN and one or more of the Seller Defendants and/or their affiliates or subsidiaries.

66.    Plaintiff seeks injunctive relief and monetary damages on behalf of himself and each of the Classes.

67.    This action may properly be brought and maintained as a class action pursuant to Fla. R. Civ. P. 1.220(b)(3). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

68.    Upon application by Plaintiff's counsel for certification of the Classes, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, and/or judicial economy.

69.  <u>Numerosity</u>. The number of persons within each of the Classes is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is therefore impracticable to join each member of each of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of each of the Classes renders joinder impracticable. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

70.  <u>Typicality</u>. Plaintiff received from MASN at least one SMS text message via an ATDS containing a hyperlink to a website operated by each of the Seller Defendants, without providing his "prior express written consent" to receive "advertising" or "telemarketing" text messages via an "ATDS" within the meaning of the TCPA from any of the Defendants. Consequently, the claims of Plaintiff are typical of the those of the other Class Members he seeks to represent, and Plaintiff's interest is consistent with and not antagonistic to those of the other Class Members he seeks to represent. Plaintiff and all Class Members have been impacted by, and face continuing harm out of, Defendants' violations and/or misconduct as alleged herein.

71.  <u>Adequacy</u>. As Class representative, Plaintiff has no interests that are adverse to, or conflict with, the interests of the absent Class Members and is able to fairly and adequately represent and protect the interests of the Class Members. Plaintiff has raised viable claims of the type reasonably expected to be raised by Class Members and will vigorously pursue those claims. If necessary, Plaintiff may seek

leave to amend this Complaint to add additional representatives of the Classes or assert additional claims.

72. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this action. Thesecounsel are experienced in handling complex class action claims, including alleging violation of the TCPA.

73. <u>Commonality and Predominance</u>. There are well defined common questions of fact and law that exist as to all members of each of the Classes and predominate over any questions affecting only individual members of each of the Classes. These common legal and factual questions, which do not vary from Class Member to Class Member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a. Whether Defendants and/or any of their affiliates, subsidiaries, or agents transmitted advertising or telemarketing SMS text messages to Class Members' cellular telephones;

b. Whether the SMS text messages transmitted by Defendants and/or any of their affiliates, subsidiaries, or agents were transmitted using an automatic telephone dialing system;

c. Whether Defendants and/or any of their affiliates, subsidiaries, or agents can meet their burden to show they obtained prior express written consent (as defined by 47 C.F.R. 64.1200(£)(8)) to send the text messages complained of;

18

d.  Whether the complained of conduct was knowing and/or willful;

e.  Whether Defendants and/or any of their affiliates, subsidiaries, or agents should be enjoined from engaging in such conduct in the future.

74.  <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if every member of each of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class Member. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the

19

statute to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular telephone providers.

75.    Additionally, the prosecution of separate actions by individual Class Members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

76.    Defendants and/or any of their affiliates, subsidiaries, or agents have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate. Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE TCPA (47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Classes Against
### MASN and each Seller Defendant)

77.    Plaintiff incorporates by this reference paragraphs 1-76 of this Complaint as if fully stated herein.

78.    The foregoing acts and omissions constitute violations of the TCPA,

including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

79.     Because of the Defendants'  violations of 47 U.S.C. § 227, Plaintiff and all Class Members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

80.     Plaintiff and all Class Members are also entitled to, and do seek, an award of $500.00 in statutory damages for each SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

81.     Plaintiff and Class Members also seek an award of attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**KNOWING AND/OR WILLFUL VIOLATION**
**OF THE TCPA (47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Classes Against**
**MASN and each Seller Defendant)**

82.     Plaintiff incorporates by this reference paragraphs 1-76 of this Complaint as if fully stated herein.

83.     The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

84.     Because of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and all Class Members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

85.     Plaintiff and all Class Members are also entitled to, and do seek, treble damages of up to $1,500.00 for each SMS message transmitted in violation of the

TCPA pursuant to 47 U.S.C. § 227(b)(3).

86.     Plaintiff and Class Members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiff prays for relief and judgment in his favor, as follows:

A.     Injunctive relief prohibiting such violations of the TCPA in the future;

B.     As a result of the Defendants' violations of 47 U.S.C. §227(b)(1), Plaintiff seeks for himself and each Class Member $500.00 in statutory damages for each and every violative SMS text message;

C.     As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class Member treble damages, as provided by the statute, of up to $1,500.00 for each and every violative SMS text message;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and

E.     An Order certifying this action to be a proper class action pursuant to Fla. R. Civ. P. 1.220, establishing appropriate Classes and any additional subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing Plaintiff's counsel as counsel for the Classes.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Classes, hereby demands a jury trial on all issues so triable.

Date:   December 11, 2017                Respectfully submitted,

                                         **CAREY RODRIGUEZ**
                                         **MILIAN GONYA LLP**

                                         By: /s/ Frank S. Hedin_____
                                         Frank Hedin (Fla. Bar No. 109698)
                                         Email: fhedin@careyrodriguez.com
                                         Secondary: mmartucci@careyrodriguez.com
                                         Secondary: service@careyrodriguez.com
                                         David P. Milian (Fla. Bar No. 844421)
                                         Email: dmilian@careyrodriguez.com
                                         Secondary: ejimenez@careyrodriguez.com
                                         Ruben Conitzer (Fla. Bar No. 100907)
                                         Email: rconitzer@careyrodriguez.com
                                         Secondary: cperez@careyrodriguez.com
                                         1395 Brickell Avenue, Suite 700
                                         Miami, FL 33131
                                         Telephone: (305) 372-7474
                                         Facsimile: (305) 372-7475

                                         *Counsel for Plaintiff*