EXHIBIT
E

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2017-028386-CA 44

SEBASTIAN GONZALEZ,

      Plaintiff,

CLASS REPRESENTATION (REQUESTED)

vs.

TCR SPORTS BROADCASTING HOLDING
LLP, d/b/a/ Mid-Atlantic Sports Network;
HYUNDAI MOTOR AMERICA, INC.;
MERCEDES-BENZ USA, LLC; and JIFFY
LUBE INTERNATIONAL, INC,

      Defendants.

_____/

## OBJECTIONS OF
## TCR SPORTS BROADCASTING HOLDING, LLP, TO
## NOTICE OF TAKING SUBPOENA *DUCES TECUM* WITHOUT DEPOSITION
## OF NON-PARTY JPR GENERAL CONTRACT CORP.

      Defendant, TCR Sports Broadcasting Holding, LLP d/b/a Mid-Atlantic Sports Network

("MASN"), by the undersigned, its attorneys, objects to the Notice of Taking Subpoena *Duces*

*Tecum* Without Deposition of Non-Party JPR General Contract Corp. ("Notice of Subpoena"),

and states as follows:

      1.      Pursuant, in part, to Fla. R. Civ. P. 1.100(b) and Fla. R. Civ. P. 1.351(b), MASN

objects to the Notice of Subpoena.  Rule 1.351(b) states:

> If any party serves an objection to production under this rule
> within 10 days of service of the notice, the documents or things
> shall not be produced pending resolution of the objection in
> accordance with subdivision (d).

      2.      The Notice of Subpoena was served by registered mail on December 19, 2017.

These objections are timely served and filed, as required by Rule 1.351(b) and Rule 2.514 within

15 days of service of the Notice of Subpoena.  *See* Fla. R. Civ. P. 1.351(b) ("A party desiring

production under this rule shall serve notice as provided in rule 1.080 on every other party of the intent to serve a subpoena under this rule at least … 15 days before the subpoena is issued if the service is by mail or email …"); Fla. R. Jud. Admin. 2.514(b) ("When a party may or must act within a specified time after service and service is made by mail or e-mail, 5 days are added after the period that would otherwise expire under subdivision (a)."). [1]

3.      MASN intends to timely remove this action to the United States District Court for the Southern District of Florida.  The time for doing so has not yet expired, and MASN will timely file for removal.

4.      MASN files these objections before removing only because Fla. R. Civ. P. 1.351(b) compels MASN to do so.  Filing of these objections at this time is mandatory.

5.      MASN's objections are set forth below, and all removal rights on any and all bases are reserved and none waived.

6.      On December 11, 2017, plaintiff Sebastian Gonzalez ("Plaintiff") filed a Complaint against MASN, Hyundai Motor America, Inc., Mercedes-Benz USA, LLC, and Jiffy Lube International, Inc.  None of the defendants has a principal office in Florida.

7.      Plaintiff alleges violations of the federal Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").  MASN denies those allegations and did not violate the TCPA.

8.      Pursuant to Fla. R. Civ. P. 1.280(e), the Court can control the timing of discovery. "The need for soundness in the result outweighs the need for speed in reaching it."  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 937, 938 (1952) (Burton, J., dissenting).

9.      MASN, a Maryland entity, accepted service of process in Maryland on December 20, 2017.

---

[1] Rule 2.514 also states: "When the period stated in days is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."

10.     On December 18, 2017, two days *before* MASN was served, Plaintiff propounded eighty-nine document requests to MASN ("Requests").  Exhibit A.  The Requests are sweeping and overbroad.  At the appropriate time, MASN will respond and object.

11.     Then, on December 19, 2017, one day *before* MASN was served, Plaintiff's counsel signed and served the Notice of Subpoena. The following day, December 20, 2017, approximately an hour after MASN was served, Plaintiff filed the Notice of Subpoena.  Exhibit B.  Plaintiff seeks to compel document production in Miami on January 31, 2018.

12.     Based on information and belief, defendant Hyundai Motor America, Inc., has not yet been served.

13.     Defendants, all of whom are located outside of Florida,[2] are entitled to sufficient time to investigate the claims and prepare a defense before being compelled to attend a non-party inspection of records.  Plaintiff's request does not provide sufficient time.  MASN objects.

14.     The header of Plaintiff's Notice of Subpoena refers to the non-party to be served as "JPR General Contract Corp."  MASN has no knowledge of that entity.  MASN objects.

15.     The body of Plaintiff's Notice of Subpoena refers to Phizzle, Inc. ("Phizzle"). Without waiving any objections, MASN will assume that the purported entity to be served with the subpoena, if any, is non-party, Phizzle. .

16.     Phizzle is a Delaware company located in California, where its resident agent is also located.  A copy of the California Secretary of State's web page (last visited December 28, 2017), is attached as Exhibit C, and judicially noticeable.  Judicial notice should be taken.[3]

---

[2] *See* Complaint, ¶¶3-6.

[3] "A court may take judicial notice of the following matters, to the extent that they are not embraced within s. 90.201: … (5) Official actions of the legislative, executive, and judicial departments of the United States and of any state, territory, or jurisdiction of the United States."

17.     The Notice of Subpoena directs Phizzle to designate one or more representatives "to *appear*" [emphasis added] in Miami, Florida, on January 31, 2018, and to produce documents "at that time and place."

18.     Fla. R. Civ. P. 1.351(c) states:  "The subpoena shall require production only in the county of the residence of the custodian or other person in possession of the documents or things or in the county where the documents or things are located or where the custodian or person in possession usually conducts business."  Phizzle does not reside in Florida.  Nor is its data located in Florida.  Plaintiff cannot compel a California entity to "appear" or to produce documents in Florida.  MASN objects.[4]

19.     Rule 1.351(b) states that the proposed subpoena "*shall state* that the person who will be asked to produce the documents or things has the right to object to the production under this rule *and that the person will not be required to surrender the documents or things.*" [emphasis added]. The proposed subpoena does not so state. Instead, it improperly states:

> "You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena….. If you fail

---

Fla. Stat. Ann. § 90.202.  The 1976 Law Revision Council note states that "if a party requests that judicial notice be taken and satisfies the requirements of Section 90.203, then judicial notice of these matters is mandatory."  Section 9.203 requires timely written notice of the request, filed with the court and sufficient information to enable the Court to take judicial notice.  This objection is timely written notice to the adverse party and provides Phizzle's sufficient information. Further, the 1976 Law Revision Council Note states: "This section is not intended to be a limitation on the court's discretionary power to take judicial notice of matters listed in § 90.202 when it feels such notice is appropriate. Therefore, if a party requests judicial notice of a matter and fails to give the requisite notice to adverse parties or sufficient information to the court, the court may judicially notice the matter despite the failure to satisfy the requirements of this section."  If, however, the Court is not inclined to do so, notice is requested pursuant to §90.205.

[4] The Notice of Subpoena states that, "[i]n lieu of an appearance, documents may be produced by overnight mail" in Miami.  Given that the documents requested include Phizzle's entire database, that is unlikely at a minimum.  Further, at this juncture, not knowing what Phizzle may or may not choose to do, MASN must assume that inspection of the subpoena seeks to compel Phizzle to "to *appear*" [emphasis added] in Miami, Florida.

to appear or bring the documents listed on Schedule A, you may be in contempt of Court. You are subpoenaed to appear by the following attorney, and *unless excused from this subpoena by this attorney or the court, you must respond to this subpoena as directed*." [emphasis added].

MASN objects.

20.     Further, there is insufficient time to make necessary arrangements.  Plaintiff cannot serve a Florida subpoena on Phizzle absent compliance with the California Interstate and International Depositions and Discovery Act, Cal. Civ. Proc. Code § 2029.100.[5]  It is highly unlikely that could be accomplished before the date unilaterally set by Plaintiff for an inspection of records on January 31, 2018.  Out of an abundance of caution, MASN objects that Plaintiff has provided insufficient time for inspection of records from a California witness in Miami.

21.     Phizzle may be required to appear and produce records only in California.  If Phizzle is properly served with a valid subpoena designating a valid location, MASN needs sufficient time and notice to appear in California for inspection of records.  MASN objects to the lack of sufficient notice.

22.     Plaintiff demands production of confidential information of MASN and non-parties, including the cellular telephone numbers of tens of thousands of consumers.

23.     No confidentiality order has been entered, and there has been insufficient time for MASN or Phizzle to seek a protective order.  MASN had no knowledge of Plaintiff's claim prior to being served.  MASN had no notice that Plaintiff wished to demand records from Phizzle until service of the Notice of Subpoena.

24.     Phizzle and MASN have a contract under which Phizzle performs services for MASN ("Contract").  Those services include maintaining certain MASN data and transmittal of

---

[5] "Service of a subpoena on a person named within must be made as provided by law."  Fla. R. Civ. P. 1.410(d).

text messages to subscribers to MASN's mobile alert messaging service.

25.     Essentially, the mobile alert messaging service is a text message program.  A "Subscriber"[6] sends an opt-in "short code" message by text to "29292."  The message contains a prescribed keyword, such as "Orioles" or "Nationals."  Phizzle receives the message and generates a "bounce back" message that informs the subscriber of terms and conditions and other matters, tells him or her how to obtain "help," and provides "STOP" directions to terminate the messaging service.  It also informs the Subscriber of the maximum number of messages that will be sent, *e.g.,* 12 per month.  The Subscriber's cellular phone number is placed on an opt-in list and text messages are then sent to the phone.  For example, a message might inform a subscriber that a particular player hit a home run in a specific inning.

26.     Plaintiff's proposed subpoena would invade the privacy rights of tens of thousands of consumers by disclosure of their cellular telephone numbers and information, without any Fla. R. Civ. P. 1.280(c)(7) protective or confidentiality order.

27.     Pursuant to the Contract, Phizzle holds MASN's confidential information, including tens of thousands of consumer telephone numbers.  Plaintiff demands production of all of that information, without notice to the consumers and without a confidentiality or protective order.

28.     The Contract defines, as "Subscriber Data," requests from customers for messages, and their contact and preference information.  Under Contract ¶3(b) and ¶6(a), Subscriber Data is owned by MASN and stored on Phizzle's computer system.

29.     All of that information is expressly confidential and a trade secret.  The Contract states that:

---

[6] The Contract defines a "Subscriber" as an individual who opts to receive messages from the system.  Contract, ¶1.

> "Each party acknowledges that it or its Representatives may, in the course of performing its or its responsibilities or exercising its rights hereunder, be exposed to or acquire information which is proprietary to or confidential to the other party, its affiliated companies or third parties to whom such other party has a duty of confidentiality. Any and all non-public information obtained by such party (or its Representatives), including any trade secrets, processes, proprietary data, and other technical or business information or documentation of such other party shall be deemed to be confidential and proprietary information ('Confidential Information'. In addition to the foregoing, Confidential Information includes the terms of this Agreement and any other information designated in writing as confidential. For the avoidance of doubt, in addition to the foregoing, Subscriber Data and the content of any Transmission(s) shall be deemed Confidential Information hereunder, and Phizzle will ensure that access to such Subscriber Data and Transmission content is not provided to anyone, including employees of Phizzle and its affiliates, unless such person (x) has a need to know in order for Phizzle to effectively perform its obligations hereunder and (y) has been advised of the restrictions set forth herein on the use and disclosure of such Subscriber Data and Transmission content."

Contract, ¶13(a).

30.     Further, in the Contract, ¶13(b): "Each party agrees (i) to hold Confidential Information of the other in strict confidence; (ii) not to disclose such Confidential Information to third parties or to use such Confidential Information for any purpose other than as contemplated by, and authorized under, this Agreement; and (iii) to advise each of its Representatives who may be exposed to such information to keep such Confidential Information confidential (it being understood that each of such Representatives shall be bound by a duty of confidentiality…."

31.     The Contract is governed by the laws of New York, without regard to the conflict-of-laws rules thereof.  Contract, ¶14.  Under New York law:

    a.  "A 'trade secret' is generally defined as a … compilation of information used in one's business that confers a competitive advantage over those in similar businesses who do not know it or use it."  104 N.Y. Jur. 2d Trade Regulation

§ 251.[7]

b. "A witness who objects to disclosure on the ground that the requested information constitutes a trade secret bears only a minimal initial burden of demonstrating the existence of a trade secret…." *Ferolito v. Arizona Beverages USA, LLC*, 119 A.D.3d 642, 644, 990 N.Y.S.2d 218, 220 (2014).

c. "[A] party seeking disclosure of trade secrets must show that such information is indispensable to the ascertainment of truth and cannot be acquired in any other way…." *Id*. (internal quotations and citation omitted).  .

32.     Because Plaintiff wrongfully demands that Phizzle produce MASN's confidential and proprietary information without a protective or confidentiality order, MASN objects.

33.     Plaintiff's discovery requests go beyond the scope of discovery.  MASN objects.

34.     Discovery is limited to the subject-matter of the action.  Fla. R. Civ. P. 1.280(b)(1) states: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party…."

35.     Plaintiff's discovery requests are not limited to matters that are relevant to the subject matter of this action.

---

[7] "Six factors are to be considered in determining whether a trade secret exists:  (1) the extent to which the information is known outside the business; (2) the extent to which it is known by a business' employees and others involved in the business; (3) the extent of measures taken by a business to guard the secrecy of the information; (4) the value of the information to a business and to its competitors; (5) the amount of effort or money expended by a business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."  104 N.Y. Jur. 2d Trade Regulation § 251.  Each of those factors supports the conclusion that MASN's list of Subscribers – maintained confidentiality on Phizzle's platform – is a trade secret.

8

a.  Plaintiff's discovery requests "cover[] the time period January 1, *2014* through the present…."  Exhibit B, Schedule A, Definition ¶11.

b.  Plaintiff did not opt in to the MASN mobile alert messaging service until August *2017*, Compl., ¶33, and he opted out long before the "present."

c.  Discovery of events that pre-date the claim by more than three years is not relevant to the subject matter of the action.  Discovery of events that post-date the claim is not relevant.  MASN objects to all requests such as these that go beyond the subject matter of the action.

36.     Plaintiff's discovery requests define document "to be synonymous in meaning and equal in scope to the term 'items' in *Federal* Rule of Civil Procedure 34."  Exhibit B, Schedule A, Definition ¶12 (emphasis added).  The definition that follows is a veritable word slaw that is unintelligible.  MASN objects.  "Document" is more properly defined by Fla. R. Civ. P. 1.350(a) as incorporated by Rule 1.351(a).

37.     Plaintiff's Instruction 1 demands that "[e]ach document requested shall be produced in its entirety."  Exhibit B, Schedule A, Instruction 1.  Yet, Plaintiff requests production of Phizzle's entire database.  Request No. 12.  Instruction 1 is overbroad and improper.  It requests not only information relating to MASN, but data as to every other customer of Phizzle.  Further, the request for production of a database "in its entirety" is vague and ambiguous.

38.     Plaintiff's discovery requests define "communication" to include oral communications and telephone conversations. Exhibit B, Schedule A, Definition ¶13. Nevertheless, Plaintiff requests production of communications.  That is beyond the scope of a Request for Production of Documents and Things Without Deposition.  Fla. R. Civ. P. 1.351.

MASN objects.[8]

39.     A few, out of many, examples of improper and overly broad requests follow.

   a.   "The entire database of electronically stored information maintained by you with respect to the universe of Messages and Recipients." Request No. 12.

   b.   "All written agreements between you and MASN that refer, reflect, ore [sic] relate to marketing, including but not limited to text message marketing." Request No. 13.

   c.   "All documents and communications including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relates to any processes you use to ensure the efficient dissemination of messages." Request No. 24.

40.     Plaintiff also improperly seeks to impose a duty on Phizzle to make a legal determination of what may be "potentially relevant."   Plaintiff requests:   "Any and all other documents, communications, or information potentially relevant to the claims alleged in the Complaint in this action that have not otherwise been requested herein."   Request No. 28.   It is not proper for Plaintiff to demand that Phizzle, *a non-party*, determine what may be "relevant." Phizzle – a non-party and non-lawyer – should not be required to retain counsel and make relevancy determinations.

41.     The Rules and decisions cited herein constitute a memorandum of points and authorities.   MASN reserves the right to amplify and supplement these points and authorities on any further proceeding on these objections.   If there is any further proceeding on these

---

[8] "A party may seek inspection and copying of any documents or things within the scope of rule 1.350(a)...."  Fla. R. Civ. P. 1.351(a).  Fla. R. Civ. P. 1.350(a) does not authorize production of oral communications and telephone conversations such as those requested by Plaintiff.

objections, MASN requests a hearing at a mutually convenient time for the parties and the Court.

Wherefore, defendant, TCR Sports Broadcasting Holding, LLP d/b/a Mid-Atlantic Sports Network, objects to the Notice of Taking Subpoena *Duces Tecum* Without Deposition of Non-Party JPR General Contract Corp. [sic].

Respectfully Submitted,

/s/ Michael D. Berman
Michael D. Berman
RIFKIN WEINER LIVINGSTON LLC
2002 Clipper Park Road, Suite 108
Baltimore, MD 21211
mberman@rwllaw.com
Telephone: (410) 206-5049
Facsimile: (410) 769-8811
*Motion for Admission Pro Hac Vice Pending*

GUNSTER
600 Brickell Avenue, Suite 3500
Miami, Florida  33131
Telephone:  305-376-6000
Facsimile:  305-376-6010
acortinas@gunster.com

By:  /s/ Angel A. Cortiñas
     Angel A. Cortiñas: FBN 797529
     Jonathan H Kaskel, FBN: 52718

*Counsel for TCR Sports Broadcasting*
*    Holding LLP*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 2, 2018, copies of the foregoing were served on the following as well as CBL44@jud11.flcourts.org:

**Frank Hedin, Esquire**
**David P. Milian, Esquire**
**Ruben Conitzer, Esquire**
CAREY RODRIGUEZ MILLIAN GONYA LLP
fhedin@careyrodriguez.com
dmilian@careyrodriguez.com
rconitzer@careyrodriguez.com
*Counsel for Plaintiff*

**Amy L. Brown, Esquire**
SQUIRE PATTON BOGGS
amy.brown@squirepb.com
*Counsel for Mercedes-Benz USA, LLC*

11

EXHIBIT
A

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
# IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SEBASTIAN GONZALEZ,

Plaintiff,

v.

TCR SPORTS BROADCASTING HOLDING
LLP, d/b/a/ Mid-Atlantic Sports Network;
HYUNDAI MOTOR AMERICA, INC.;
MERCEDES-BENZ USA, LLC; and JIFFY
LUBE INTERNATIONAL, INC,

Defendants.

Case No. 2017-028386-CA-01

(JURY TRIAL DEMANDED)

(CLASS REPRESENTATION)

## PLAINTIFF GONZALEZ'S FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS TO DEFENDANT MASN

Pursuant to Florida Rules of Civil Procedure 1.280 and 1.350, Plaintiff Sebastian Gonzalez ("**Gonzalez**") propounds the following requests for production to Defendant TCR Sports Broadcasting Holding LLP d/b/a Mid-Atlantic Sports Network ("**MASN**").

## DEFINITIONS

1.      "**You**" or "**your**" refers to MASN and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

2.      "**Hyundai**" means Hyundai Motor America, Inc. and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

3.      "**Mercedes**" means Mercedes-Benz USA, LLC and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

4.      "**Jiffy Lube**" means Jiffy Lube International, Inc. and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

5.      "**Seller Defendants**" means collectively Hyundai, Mercedes, and Jiffy Lube.

6.      "**Phizzle**" means Phizzle, Inc. and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

7.      "**Message**" or "**messages**" means a text message sent by or on behalf of MASN that contains any reference to any of the Seller Defendants.

8.      "**Putative Class Member**" means all persons within the United States who received a non-emergency telephone call or SMS message from MASN and/or affiliates, subsidiaries, or agents of MASN to a cellular telephone through the use of an automatic dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls or SMS message.

9.      "**TCPA**" means the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations issued thereunder.

10.      "**ATDS**" and/or "**autodialer**" mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

11.      Unless otherwise specified, this Request for Production covers the time period January 1, 2014 through the present, includes all agreements that are still in effect during this period even if executed before that time, and is for all documents in your possession, custody or control, or in the possession, custody or control of any of your agents, servants, employees, representatives, consultants, accountants, attorneys, and/or wholly owned or controlled subsidiaries, joint ventures or affiliates, or subject to your and/or the person's mentioned above custody and/or control wherever located.

12.      As used in this request, the term "**document**" is defined to be synonymous in meaning and equal in scope to the term "items" in Federal Rule of Civil Procedure 34. The term "document" is intended to be comprehensive and to include, without limitation, all original writings of any nature whatsoever, copies and drafts which, by reason of notes, changes, initials, or identification marks are not identical to the original and all non-identical original copies thereof. In all cases where original or non-original copies are not available, "document" also means identical copies of original documents and copies of non-identical copies.  The term thus includes, but is not limited to, any kind of written or graphic matter, however provided or reproduced, of any kind or description, whether sent or received or neither, including but not limited to papers, books, book entries, correspondence, telegrams, cables, telex messages, memorandum, notes, data, notations, work papers,

Exhibit A

inter-office communications, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or of committee meetings, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, formulae, plans, specifications, evaluations, contracts, licenses, agreements, offers, ledgers, journals, books of records of account, summaries of accounts, bills, service invoices, receipts, balance sheets, income statements, questionnaires, answers to questionnaires, statistical records, desk calendars, appointment books, diaries, lists, tabulations, charts, graphs, maps, surveys, sound recordings, computer tapes, magnetic tapes, computer printouts, data processing input and output, e-mails, SMS text messages, MMS text messages, any other type of text messages, instant messages, microfilms, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, however, denominated, whether currently in existence or already destroyed. A draft or non-identical copy is a separate document within the meaning of this term.

13.    The term "**communication**" refers to any and all exchanges of information between or among two or more persons by any medium, including without limitation, meetings, telephone conversations, correspondence, memoranda, circulars, contracts, agreements, computer, radio, telegraph, email, instant message, SMS text messages, MMS text messages, any other type of text messages, verbal, or any other actions intended to convey or actually conveying information or data.

## INSTRUCTIONS

1.    Each document requested shall be produced in its entirety. If any part of a document is responsive to any of the following requests, the entire document should be produced. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.    These requests are continuing in character so as to require you to supplement the responses within a reasonable time if you obtain or becomes aware of any further information responsive to these requests for documents.

3.    With respect to any document or thing being withheld from production on the basis of the attorney-client privilege, work product immunity, or otherwise you must:

a) identify the nature of the privilege which is being claimed and the rule of law under which the privilege is being asserted; and,
b) provide the following information:
    (i) the type of document (e.g. letter, memorandum etc.);
    (ii) the subject matter of the document;
    (iii) the date of the document;

Exhibit A

(iv) the present location and identity of the document's custodian; and,

(v) the author, addressee, and all recipients of copies of the document.

## DOCUMENTS REQUESTED

1.     All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to the telephone number (786) 458-5841 (hereinafter, "**Gonzalez's Number**"), or any other of Plaintiff Gonzalez's personal identifying information.

2.     All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to the prior express consent required by 47 U.S.C. § 227(b)(1)(A) that you may contend would have authorized MASN to send telephone solicitations (as defined in 47 U.S.C. § 227(a)(4)) to Gonzalez's Number.

3.     All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to the prior express written consent (as defined in 47 C.F.R. § 64.1200(f)(8)) that you may contend would have authorized MASN to initiate,  or cause to be initiated, any telephone call that includes or introduces an advertisement (as defined by 47 C.F.R. § 64.1200(f)(1)) or constitutes telemarketing (as defined by 47 C.F.R. § 64.1200(f)(12)), using an ATDS to Gonzalez's Number.

4.     True and correct copies of every version of any website or webpage on which you may contend an individual could, at any point, agree to receive messages from MASN.

5.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to your use of an ATDS.

6.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to your ability to dial telephone numbers without human intervention.

7.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to your ability to dial telephone numbers in random or sequential order.

Exhibit A

8.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to your ability to dial telephone numbers in random or sequential order without human intervention.

9.     All documents and communications including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relates to any processes you use to ensure the efficient dissemination of messages.

10.     All documents, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that reflects the identities of all persons who received telephone solicitations (as defined in 47 U.S.C. § 227(a)(4)) from or on behalf of MASN after January 1, 2014.

11.     All documents, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that reflect the identities of, and contact information for, the Putative Class Members.

12.     All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to each message sent to each of the Putative Class Members.

13.     All documents that identify each and every method or mechanism by which you obtained consumers' cellular phone numbers for the purpose, in whole or in part, of transmitting messages to them, including copies of every form, electronic or paper, used to obtain such cellular phone numbers.

14.     Documents sufficient to identify the total number of messages transmitted to cellular phone numbers.

15.     All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to any responses received by MASN to each message sent to each of the Putative Class Members.

16.     All documents and communications, dated after January 1, 2010 between you and any agent, affiliate, contractor or third-party vendor who sent telephone solicitations (as defined in 47 U.S.C. § 227(a)(4)) and/or messages on behalf of MASN.

17.     All documents and communications, dated after January 1, 2010 between you and any agent, affiliate, contractor or third-party vendor regarding your compliance with the TCPA.

18.     All documents and communications, dated after January 1, 2010 between you and any of the Seller Defendants.

19.     All documents and communications that refer to, reflect, or relate to your actual authority to send messages on behalf of the Seller Defendants.

20.     All documents and communications that refer to, reflect, or relate to your actual authority to send messages containing advertisement and telemarketing contents on behalf of the Seller Defendants.

21.     All documents and communications that refer to, reflect, or relate to your actual authority to send messages containing weblinks that direct the user to websites belonging to the Seller Defendants on the Seller Defendants' behalf.

22.     All documents and communications that refer to, reflect, or relate to any joint advertising and telemarketing campaigns between you or any of the Seller Defendants.

23.     All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to your access to information and systems that would normally be exclusively within the Seller Defendants' control.

24.     All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to your access to information regarding the nature of and pricing of the Seller Defendants' products that would normally be exclusively within the Seller Defendants' control.

25.     All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to your ability to enter consumer information into any of the Seller Defendants' sales or customer systems.

26.     All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to any control any of the Seller Defendants had over the timing and frequency of transmission of messages sent by or on behalf of MASN.

27.     All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to your permission to use any of the Seller Defendants' trade names, trademarks, and/or service marks.

Exhibit A

28.   All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to your permission to use any of the Seller Defendants' trade names, trademarks, and/or service marks in the messages.

29.   All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to the Seller Defendants' ability to approve, write or review the content of any messages sent by MASN.

30.   All documents, dated after January 1, 2010, that refer to, reflect, or relate to whether any of the Seller Defendants knew or should have known that the messages were sent using an ATDS.

31.   All documents, dated after January 1, 2010, that refer to, reflect, or relate to whether any of the Seller Defendants knew or should have known that the messages were sent using technology capable of dialing telephone numbers without intervention.

32.   All documents, dated after January 1, 2010, that refer to, reflect, or relate to whether any of the Seller Defendants knew or should have known that the messages were sent using technology capable of dialing telephone numbers in random or sequential order.

33.   All documents, dated after January 1, 2010, that refer to, reflect, or relate to whether any of the Seller Defendants knew or should have known that the messages were sent using technology capable of dialing telephone numbers in random or sequential order without human intervention.

34.   All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to any referral fees or similar compensation you received from any of the Seller Defendants.

35.   All documents and communications, dated after January 1, 2010 that refer to, reflect, or relate to any consideration you received from any of the Seller Defendants in connection with the messages.

36.   All documents and communications from January 1, 2010 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to MASN's guidelines, policies and procedures for compliance (and training employees and representatives to comply) with the TCPA.

37.   All documents and communications from January 1, 2010 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refer to, reflect, or relate to

Exhibit A

MASN's guidelines, policies, and/or procedures for compliance (and training employees and representatives to comply) with the TCPA, and to any contracts, subcontracts, and/or any other agreements or memoranda governing compliance with the TCPA.

38.     All documents from January 1, 2014 to the present that allege that you violated the TCPA by not obtaining prior express consent as required.  This request includes without limitation all demand letters, preservation demands, complaints, pleadings, deposition transcripts, trial transcripts, settlement agreements, and judgments in all lawsuits and administrative proceedings, including complaints filed with the Federal Communications Commission, the Consumer Finance Protection Bureau, alleging violations of the express prior consent provisions of the TCPA by or on behalf of MASN.

39.     All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to allegations that MASN violated the TCPA by not obtaining prior express consent from telephone number subscribers.

40.     All documents and communications that could have informed you that you were violating the TCPA.

41.     All documents and communications that reasonably should have informed you that you were violating the TCPA.

42.     All documents and communications that could have informed any of the Seller Defendants that you were violating the TCPA.

43.     All documents and communications that reasonably should have informed any of the Seller Defendants, that you were violating the TCPA.

44.     All documents and communications that refer to, reflect, or relate to your failure to take effective steps within your power to comply with the TCPA.

45.     All documents and communications by and between MASN and Phizzle.

46.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relates to Phizzle's use of an ATDS.

47.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor

or third-party vendor that refers or relates to Phizzle's ability to dial telephone numbers without human intervention.

48. All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to Phizzle's ability to dial telephone numbers in random or sequential order.

49. All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to Phizzle's ability to dial telephone numbers in random or sequential order without human intervention.

50. All documents and communications by and between Michael Haley and Phizzle.

51. All documents and communications by Michael Haley that refer, relate to or concern Phizzle.

52. All documents and communications by and between Jim Cuddihy and Phizzle.

53. All documents and communications by Jim Cuddihy that refer, relate to or concern Phizzle.

54. All documents and communications that refer to, reflect, or relate to MASN's Executive Vice President, Jim Cuddihy's statement that "Phizzle's mobile marketing tools offer fans of the Baltimore Orioles and Washington Nationals the opportunity to connect with the teams in a one-one-one pioneering way."

55. All documents and communications that refer to, reflect, or relate to the creation or maintenance of the webpage: http://www.masnsports.com/masn-news-information/cellphoneupdates.html."

56. All documents and communications that refer to, reflect, or relate to the short code telephone number "29292."

57. All documents and communications that refer to, reflect, or relate to the relationship and/or the connection between MASN and the short code telephone number "29292."

58. All documents and communications that refer to, reflect, or relate to the ownership of short code telephone number "29292."

Exhibit A

59.     All documents and communications that refer to, reflect, or relate to the operation of short code telephone number "29292."

60.     All documents and communications that refer to, reflect, or relate to MASN's lease or sublease of any short code telephone numbers, including but not limited to short code telephone number "29292."

61.     All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "29292" to run on-air contests.

62.     All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "29292" to send mass text messages to fans.

63.     All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "29292" to promote special events and appearances.

64.     All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "29292" to further any of its mobile marketing initiatives.

65.     All documents and communications that refer to, reflect, or relate to how an individual could have learned to send a message to the short code telephone number "29292" to take part in any on-air contest.

66.     All documents and communications that refer to, reflect, or relate to how an individual could have learned to send a message to the short code telephone number "29292" to receive any message.

67.     All documents and communications that refer to, reflect, or relate to how an individual could have learned to send a message to the short code telephone number "29292" to participate in any promoted special events and/or appearances.

68.     All documents and communications that refer to, reflect, or relate to the marketing campaign entitled "MASN Sports Alerts."

69.     All documents and communications that refer to, reflect, or relate to the short code telephone number "74499."

70.     All documents and communications that refer to, reflect, or relate to the relationship and/or the connection between MASN and the short code telephone number "74499."

71.    All documents and communications that refer to, reflect, or relate to the ownership of short code telephone number "74499."

72.    All documents and communications that refer to, reflect, or relate to the operation of short code telephone number "74499."

73.    All documents and communications that refer to, reflect, or relate to MASN's lease of any short code telephone numbers, including but not limited to short code telephone number "74499."

74.    All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "74499" to run on-air contests.

75.    All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "74499" to send mass text messages to fans.

76.    All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "74499" to promote special events and appearances.

77.    All documents and communications that refer to, reflect, or relate to MASN's use of the short code telephone number "74499" to further any of its mobile marketing                                                                        initiatives.

78.    All documents and communications that refer to, reflect, or relate to how an individual could have learned to send a message to the short code telephone number "74499" to take part in any on-air contest.

79.    All documents and communications that refer to, reflect, or relate to how an individual could have learned to send a message to the short code telephone number "74499" to receive any message.

80.    All documents and communications that refer to, reflect, or relate to how an individual could have learned to send a message to the short code telephone number "74499" to participate in any promoted special events and/or appearances.

81.    All documents and communications that refer to, reflect, or relate to MASN's relationship with Phizzle, including but not limited to any and all documents and communications that refer to, reflect, or relate to Phizzle's involvement in sending messages through the short code telephone number "29292.

82.    All documents and communications that refer to, reflect, or relate to MASN's relationship with Phizzle, including but not limited to any and all documents

Exhibit A

and communications that refer to, reflect, or relate to Phizzle's involvement in sending messages through the short code telephone number "74499."

83.    All documents and communications, dated after January 1, 2010 between you and any principal, affiliate or third-party seller on whose behalf you sent, or caused to be sent, any telephone solicitations (as defined in 47 U.S.C. § 227(a)(4)) and/or messages.

84.    All documents and communications from January 1, 2010 to the present, including electronically-stored information (in native format) maintained by any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to the guidelines, policies and procedures for compliance by MASN with the TCPA, including the requirement of obtaining prior express consent.

85.    The entire database of electronically stored information maintained by you and/or on its behalf by any agent, affiliate, contractor or third-party vendor with respect to the universe of telephone solicitations and unsolicited advertisements (as defined in 47 U.S.C. § 227(a)(4)) sent by MASN from January 1, 2010 to the present.

86.    All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format), maintained by you or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to any automated, prerecorded, artificial, electronic, computerized, and/or internet-related advertising systems, and/or any other systems used in the course of telemarketing, the outsourcing of telemarketing, cellular telephone number acquisition and/or cellular telephone number generation.

87.    All claims for insurance coverage and defense filed by you and/or any agent, affiliate, contractor or third-party vendor with respect to this action (the "**Claims**").

88.    All policies of insurance (including corresponding declarations pages) that may provide insurance coverage or defense to you and/or any agent, affiliate, contractor or third-party vendor for any or all of the claims asserted in this action (the "**Policies**").

89.    All documents and communications from January 1, 2014 to the present, including electronically-stored information (in native format) maintained by you and/or any agent, affiliate, contractor or third-party vendor, that refer to, reflect, or relate to the Claims and the Policies, including all communications from insurance carriers reserving their rights under the Policies.

Dated: December 18, 2017                    Respectfully submitted,

Exhibit A

By: /s/ Frank S. Hedin
**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
David P. Milian
Florida Bar No. 844421
dmilian@careyrodriguez.com
Frank S. Hedin
Florida Bar No. 109698
fhedin@careyrodriguez.com
Ruben Conitzer
Florida Bar No. 100907
rconitzer@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
*Attorneys for Plaintiff*

Exhibit A

EXHIBIT
B

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
# IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SEBASTIAN GONZALEZ,

Plaintiff,

v.

TCR SPORTS BROADCASTING HOLDING LLP, d/b/a/ Mid-Atlantic Sports Network; HYUNDAI MOTOR AMERICA, INC.; MERCEDES-BENZ USA, LLC; and JIFFY LUBE INTERNATIONAL, INC,

Defendants.

Case No. 2017-028386-CA-01

(JURY TRIAL DEMANDED)

(CLASS REPRESENTATION)


## NOTICE OF TAKING SUBPOENA *DUCES TECUM* WITHOUT DEPOSITION OF NON-PARTY JPR GENERAL CONTRACT CORP.

**To: All counsel of record.**

       **YOU ARE HEREBY NOTIFIED** that after fifteen (15) days from the date of this notice, subject to the rights of any party, the undersigned will issue the attached Subpoena *Duces Tecum* Without Deposition, pursuant to Fla. R. Civ. P. 1.351(c) upon **PHIZZLE, INC.**

       Plaintiff reserves the right to use any information produced pursuant to the subpoena for discovery, for use at trial, or for such other purposes as may be permitted under the Florida Rules of Civil Procedure, the Florida Rules of Evidence or other applicable law.

Exhibit B

For the Court:

December 19, 2017

By: /s/ Frank S. Hedin
**CAREY RODRIGUEZ**
**MILIAN GONYA, LLP**
David P. Milian
Florida Bar No. 844421
dmilian@careyrodriguez.com
Frank S. Hedin
Florida Bar No. 109698
fhedin@careyrodriguez.com
Ruben Conitzer
Florida Bar No. 100907
rconitzer@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
*Attorneys for Plaintiff*

Exhibit B

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY THAT** a true and correct copy of the foregoing document was served on this 19th day of December 2017, via Registered Mail to all parties in this action at the following addresses:

Hyundai Motor America, Inc.
Attn: National Registered Agents, Inc.
818 W. 7th Street, Suite 930
Los Angeles, CA 90017

Jiffy Lube International, Inc.
Attn: The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Mercedes-Benz USA, LLC
Attn: The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

TCR Sports Broadcsating Holding, LLP
Attn: Peter G. Angelos
100 North Charles Street, 22nd Floor
Baltimore, MD 21202

By: /s/ Frank S. Hedin
Frank S. Hedin, Esq.

Exhibit B

# EXHIBIT A

Exhibit B

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

SEBASTIAN GONZALEZ,

Plaintiff,

v.

TCR SPORTS BROADCASTING HOLDING LLP, d/b/a/ Mid-Atlantic Sports Network; HYUNDAI MOTOR AMERICA, INC.; MERCEDES-BENZ USA, LLC; and JIFFY LUBE INTERNATIONAL, INC,

Defendants.

Case No. 2017-028386-CA-01

(JURY TRIAL DEMANDED)

(CLASS REPRESENTATION)

**SUBPOENA *DUCES TECUM* WITHOUT
DEPOSITION OF NON-PARTY PHIZZLE, INC.**

**THE STATE OF FLORIDA:
TO:**

> Phizzle, Inc.
> Attn: Ben Davis, Its registered agent
> 58 Second Street, Third Floor
> San Francisco, CA 94105

YOU ARE HEREBY COMMANDED to designate one or more representatives of Phizzle, Inc., with knowledge of the matters described in Schedule A hereto to appear at the law offices of **Carey Rodriguez Milian Gonya, LLP** at **1395 Brickell Avenue, Suite 700 in Miami, Florida**, on **January 31, 2018** at **9:30 A.M.**, and to have with you at that time and place all the documents and things set forth on Schedule A hereto. In lieu of an appearance, documents may be produced

Exhibit B

by overnight mail to the attention of Ruben Conitzer, Esq. at the offices of Carey Rodriguez Milian Gonya, LLP at 1395 Brickell Avenue in Miami, FL 33131.

The items will be inspected and copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena.

If you fail to appear or bring the documents listed on <u>Schedule A</u>, you may be in contempt of Court. You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you must respond to this subpoena as directed.

Exhibit B

For the Court:

Dated: January ___, 2017         By: /s/ Frank S. Hedin
                                 **CAREY RODRIGUEZ**
                                 **MILIAN GONYA, LLP**
                                 David P. Milian
                                 Florida Bar No. 844421
                                 dmilian@careyrodriguez.com
                                 Frank S. Hedin
                                 Florida Bar No. 109698
                                 fhedin@careyrodriguez.com
                                 Ruben Conitzer
                                 Florida Bar No. 100907
                                 rconitzer@careyrodriguez.com
                                 1395 Brickell Avenue, Suite 700
                                 Miami, Florida 33131
                                 Telephone: (305) 372-7474
                                 Facsimile: (305) 372-7475
                                 *Attorneys for Plaintiff*

---

If you are a person with a disability who needs any accommodation in order to respond to this subpoena, you may request such assistance by contacting Ruben Conitzer, Esq. at CAREY RODRIGUEZ MILIAN GONYA, LLP, 1395 Brickell Avenue, Suite 700, Miami, Florida 33131, 305-372-7474, within 2 working days of your receipt of this subpoena; if you are hearing or voice impaired, call 711.

7

SCHEDULE "A"

DEFINITIONS

1. "**You**", "**your**", or "**Phizzle**" refers to Phizzle, Inc. and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

2. "**Gonzalez**" means Sebastian Gonzalez, the named plaintiff in this action, who is a subscriber of

3. "**MASN**" means TCR Sports Broadcasting Holding LLP d/b/a Mid-Atlantic Sports Network.

4. "**Hyundai**" means Hyundai Motor America, Inc. and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

5. "**Mercedes**" means Mercedes-Benz USA, LLC and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

6. "**Jiffy Lube**" means Jiffy Lube International, Inc. and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of their officers, agents, employees, directors, representatives, successors and assigns.

7. "**Seller Defendants**" means collectively Hyundai, Mercedes, and Jiffy Lube.

8. "**Message**" or "**messages**" means a text message sent by or on behalf of MASN that contains any reference to any of the Seller Defendants.

9. "**Recipient**" means all persons who received a message.

10. "**TCPA**" means the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations issued thereunder.

11. Unless otherwise specified, this Request for Production covers the time period January 1, 2014 through the present, includes all agreements that are still in effect during this period even if executed before that time, and is for all documents in your possession, custody or control, or in the possession, custody or control of any of your agents, servants, employees, representatives, consultants, accountants, attorneys, and/or wholly owned or controlled subsidiaries, joint ventures or affiliates, or subject to your and/or the person's mentioned above custody and/or control wherever located.

## SCHEDULE "A"

12. As used in this request, the term "**document**" is defined to be synonymous in meaning and equal in scope to the term "items" in Federal Rule of Civil Procedure 34. The term "document" is intended to be comprehensive and to include, without limitation, all original writings of any nature whatsoever, copies and drafts which, by reason of notes, changes, initials, or identification marks are not identical to the original and all non-identical original copies thereof. In all cases where original or non-original copies are not available, "document" also means identical copies of original documents and copies of non-identical copies. The term thus includes, but is not limited to, any kind of written or graphic matter, however provided or reproduced, of any kind or description, whether sent or received or neither, including but not limited to papers, books, book entries, correspondence, telegrams, cables, telex messages, memorandum, notes, data, notations, work papers, inter-office communications, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or of committee meetings, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, formulae, plans, specifications, evaluations, contracts, licenses, agreements, offers, ledgers, journals, books of records of account, summaries of accounts, bills, service invoices, receipts, balance sheets, income statements, questionnaires, answers to questionnaires, statistical records, desk calendars, appointment books, diaries, lists, tabulations, charts, graphs, maps, surveys, sound recordings, computer tapes, magnetic tapes, computer printouts, data processing input and output, e-mails, SMS text messages, MMS text messages, any other type of text messages, instant messages, microfilms, all other records kept by electronic, photographic, or mechanical means, and things similar to any of the foregoing, however, denominated, whether currently in existence or already destroyed. A draft or non-identical copy is a separate document within the meaning of this term.

13. The term "**communication**" refers to any and all exchanges of information between or among two or more persons by any medium, including without limitation, meetings, telephone conversations, correspondence, memoranda, circulars, contracts, agreements, computer, radio, telegraph, email, instant message, SMS text messages, MMS text messages, any other type of text messages, verbal, or any other actions intended to convey or actually conveying information or data.

## INSTRUCTIONS

1. Each document requested shall be produced in its entirety. If any part of a document is responsive to any of the following requests, the entire document should be produced. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2

**SCHEDULE "A"**

2.     These requests are continuing in character so as to require you to supplement the responses within a reasonable time if you obtain or becomes aware of any further information responsive to these requests for documents.

3.     With respect to any document or thing being withheld from production on the basis of the attorney-client privilege, work product immunity, or otherwise you must:

a) identify the nature of the privilege which is being claimed and the rule of law under which the privilege is being asserted; and,
b) provide the following information:
   (i) the type of document (e.g. letter, memorandum etc.);
   (ii) the subject matter of the document;
   (iii) the date of the document;
   (iv) the present location and identity of the document's custodian; and,
   (v) the author, addressee, and all recipients of copies of the document.

## DOCUMENTS AND ITEMS REQUESTED

1.     All documents and communications between you and MASN.

2.     All documents and communications between you and any of the Seller Defendants that relate to Messages or MASN.

3.     All documents and communications that refer to, reflect or relate to MASN.

4.     All documents and communications that refer to, reflect or relate to the use of the short code 29292 to deliver Messages on behalf of MASN or any of the Seller Defendants.

5.     All outgoing and incoming Message log files, in their original native format, pertaining to Messages delivered and / or received by MASN or any of the Seller Defendants or by you on your behalf of MASN or any of the Seller Defendants.

3

## SCHEDULE "A"

6.     All documents and communications that refer to, reflect, or relate to text message marketing conducted on behalf of MASN, including but not limited to all documents and communications regarding Messages, the Recipients, and the Seller Defendants.

7.     All documents and communications that reflect the identities of, and contact information for, the Recipients.

8.     The phone numbers for all Recipients.

9.     All documents and communications to or from Recipients.

10.     All documents and communications that refer to, reflect, or relate to Recipients.

11.     All documents and communications that refer to, reflect or relate to Messages.

12.     The entire database of electronically stored information maintained by you with respect to the universe of Messages and Recipients.

13.     All written agreements between you and MASN that refer, reflect, ore relate to marketing, including but not limited to text message marketing.

14.     Copies of each version of any terms and conditions or privacy policies authored or issued by you pertaining to the delivery of Messages, regardless of the date of any such document or communication.

15.     All documents and communications that refer to, reflect or relate to Gonzalez.

SCHEDULE "A"

16.     All documents and communications that refer to, reflect or relate to telephone number (786) 458-5841 ("Gonzalez's Number") or any other of Gonzalez's personal identifying information.

17.     All documents and communications that refer to, reflect, or relate to any prior express written consent (as defined by 47 U.S.C. § 227(b)(1)(A)) you may contend would have authorized you to send telephone solicitations to Gonzalez's Number.

18.     All documents and communications that refer to, reflect, or relate to any prior express consent (as defined by 47 C.F.R. § 64.1200(f)(8)) you may contend would have authorized you to initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement (as defined by 47 C.F.R. § 64.1200(f)(1)) or constitutes telemarketing (as defined by 47 C.F.R. § 64.1200(f)(12)), using an automatic dialer system ("**ATDS**") to Gonzalez's Number.

19.     All documents and communications that refer to, reflect, or relate to guidelines and policies and procedures (and training employees and representatives to comply) with the TCPA.

20.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to your use of an ATDS on behalf of MASN or any of the Seller Defendants.

21.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor

Exhibit B

### SCHEDULE "A"

or third-party vendor that refers or relate to your ability to dial telephone numbers without human intervention.

22.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to your ability to dial telephone numbers in random or sequential order.

23.     All documents and communications, including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relate to your ability to dial telephone numbers in random or sequential order without human intervention.

24.     All documents and communications including electronically-stored information (in native format) maintained by you or any agent, affiliate, contractor or third-party vendor that refers or relates to any processes you use to ensure the efficient dissemination of messages.

25.     All documents and communications by and between you and Michael Haley.

26.     All documents and communications by and between you and Jim Cuddihy.

27.     All documents and communications that refer to, reflect or relate to Jim Cuddihy's statement that "Phizzle's mobile marketing tool offers fans of the Baltimore Orioles and Washington Nationals the opportunity to connect with the teams in a one-on-one pioneering way."

Exhibit B

**SCHEDULE "A"**

28.    Any and all other documents, communications, or information potentially relevant to the claims alleged in the Complaint in this action that have not otherwise been requested herein.

Exhibit B

Skip to Main Content | Skip to Footer

**EXHIBIT C**

**Alex Padilla**
**California Secretary of State**

About    **Business**    Notary & Authentications    Elections    Campaign & Lobbying    State Archives

Registries    News    Contact

  

## Business Entities (BE)

Online Services

   File LLC Statement of Information

   File Corporation Statement of Information

   Business Search

   Current Processing Dates

   Disclosure Search

Service Options

Name Availability

Forms, Samples & Fees

Statements of Information (annual/biennial reports)

Filing Tips

Information Requests (certificates, copies & status reports)

Service of Process

FAQs

Contact Information

Resources

   Business Resources

 # Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Wednesday, December 27, 2017. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## C3258757    PHIZZLE, INC

| | |
|---|---|
| Registration Date: | 11/05/2009 |
| Jurisdiction: | DELAWARE |
| Entity Type: | FOREIGN STOCK |
| Status: | ACTIVE |
| Agent for Service of Process: | BEN DAVIS |
| | 58 SECOND STREET, THIRD FLOOR |
| | SAN FRANCISCO CA 94105 |
| Entity Address: | 58 SECOND STREET, THIRD FLOOR |
| | SAN FRANCISCO CA 94105 |
| Entity Mailing Address: | 58 SECOND STREET, THIRD FLOOR |
| | SAN FRANCISCO CA 94105 |

A Statement of Information is due EVERY year beginning five months before and through the end of November.

| Document Type | File Date | PDF |
|---|---|---|
| SI-NO CHANGE | 02/22/2016 | [PDF] |
| SI-COMPLETE | 02/07/2013 | [PDF] |
| REGISTRATION | 11/05/2009 | [PDF] |

* Indicates the information is not contained in the California Secretary of State's database.

Exhibit C

Tax Information

Starting A Business Checklist

FTB Nonprofit Dissolution

FTB Administrative Dissolution/Surrender Notice

FTB Abatement

Customer Alerts

Business Identity Theft

Misleading Business Solicitations

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

**Modify Search**       **New Search**       **Back to Search Results**

## Related Links

**Legislation**

**California Codes**

**California Regulations**

**Private Service Companies**

Facet   Twitte   Print   Email   Addth

15.6K Share

Contact Information       Back to Top ↑

**Agency**

**Home**

**About**

**Business**

**Notary & Authentications**

**Elections**

**Campaign & Lobbying**

Exhibit C

**State Archives**

**Registries**

**News**

**Contact**

**Resources**

**Career Opportunities**

**Site Maintenance Schedule**

**Website Help**

**Language Access Complaint Form**

**Guidelines for Access to Public Records**

**California Home Page**

**Accessibility**

     

Copyright © 2017 California Secretary of State  |  1500 11th Street, Sacramento, California 95814  |  (916) 653-6814

**Sitemap**  |  **Privacy Policy**  |  **Free Document Readers**

Exhibit C