UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-CV-20048-DPG

SEBASTIAN GONZALEZ,

    *Plaintiff*,

v.

TCR SPORTS BROADCASTING HOLDING, LLP d/b/a Mid-Atlantic Sports Network, HYUNDAI MOTOR AMERICA, INC., and MERCEDES-BENZ USA, LLC,

    *Defendants*.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff Sebastian Gonzalez, on behalf of himself and as the putative representative of the proposed Class, moves for preliminary approval of the class action settlement set forth in the Parties' Class Action Settlement Agreement (the "Settlement Agreement" or "Settlement"), certifying a class for settlement purposes only, a copy of which is attached as **Exhibit A**.[1]

### I.     INTRODUCTION

In this Action, Plaintiff alleged that Defendants sent text messages to the Plaintiff's and Settlement Class Members' wireless telephones without their prior express written consent and in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Specifically, Plaintiff alleged that the Settlement Class Members signed up with Defendant MASN to receive informational sports text updates, but then were sent messages marketing the goods of third parties, including co-Defendants Hyundai and Mercedes. Plaintiff sought statutory damages under the

---

[1]     Unless otherwise noted, all capitalized terms have the same meaning as ascribed to it in the Settlement Agreement.

TCPA on behalf of himself and a proposed class of all individuals in the United States who received one or more marketing text messages from or on behalf of Defendants.

This litigation has been both comprehensive and highly contentious. Since this case was filed, the Parties moved to remand this case to State Court, filed two motions to stay this litigation, and a motion to dismiss and/or strike the Plaintiff's class allegations. The settlement negotiations were just as hard fought. Notwithstanding the assistance of the highly-respected and experienced JAMS mediator, the Hon. Wayne R. Andersen (Ret.), and a full day mediation, the Parties' first mediation conference resulted in an impasse. After some time, the Parties reconvened for a second mediation conference, this time with the help of the highly-respected and experienced mediator Jillian Sperber of Judicate West. Finally, after another full day of hard-fought negotiations followed by two more weeks of arms' length negotiation facilitated by Ms. Sperber, the Parties settled this Action.

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides to Settlement Class Members. As set forth in the Settlement Agreement, the Settlement creates a Settlement Fund of up to $2,500,000, which will be paid, pursuant to a hybrid pro rata and claims made basis and subject to certain deductions, to all Settlement Class Members who submit a valid Claim Form. The costs of notice, settlement administration, the amounts awarded by the Court for attorneys' fees and expenses, and Plaintiffs' service awards will be deducted from the Settlement Fund prior to payments to the Settlement Class Members. The Settlement also provides that the best practicable notice be provided to Class Members and calls for the designation of a reputable and competent professional Settlement Administrator to disseminate notice of and administer the Settlement.

In light of the extensive monetary relief available under the Settlement Agreement and the discussion below, the Court should find the Settlement to be well within the bounds of reasonableness and, thus, should preliminarily certify for settlement purposes the Settlement Class and approve the Settlement Agreement.

## II.     HISTORY OF THE LITIGATION

The record demonstrates that the Parties pursued their opposing positions comprehensively and zealously. On December 11, 2017, the Plaintiff filed his initial class action complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The material allegations of the complaint centered on Defendants' alleged transmission of advertisement text messages in alleged violation of the TCPA via an automatic telephone dialing system without prior express written consent from the recipients.  On January 5, 2018, MASN removed this action to the District Court for the Southern District of Florida. In its notice of removal, MASN represented that all other Defendants consented to the removal. On the same day, Mercedes and Jiffy Lube International, Inc.[2] joined in MASN's notice of removal. Hyundai, however, filed its notice of removal thirty-five days after MASN had been served. On January 26, 2018, Plaintiff moved to remand this action to state court. (D.E. 22).

From the outset of this Action, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  Those discussions eventually led to an agreement between the Parties to engage in formal mediation, which the Parties agreed would take place before (Ret.) U.S. District Judge Wayne R. Andersen (of the U.S. District Court for the Northern District of Illinois), who is a neutral affiliated with

---

[2]     Jiffy Lube International, Inc. has since been dismissed from this litigation. (D.E. 54).

JAMS Chicago and has substantial experience mediating consumer class actions, including class actions alleging violation of the TCPA.

The Parties then jointly moved to stay the action for a period of ninety (90) days to permit them to mediate. (D.E. 46). On May 22, 2018, the Court stayed the Action for ninety (90) days and administratively closed the Action. (D.E. 47). The Court further instructed the Parties, that if they failed to settle, to move to reopen the Action within seven (7) days following mediation. *Id.* On July 17, 2018, the Parties participated in a mediation before Judge Andersen at JAMS's offices in Chicago ("Chicago Mediation").  The Chicago Mediation lasted approximately seven hours. While the Parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement. Notwithstanding their failure to reach an agreement at that time, the Chicago Mediation permitted the opportunity for the Parties to better assess the strengths and weaknesses of their positions and to identify the likely dispositive issues in the Action.

On July 25, 2018, the Plaintiff moved to reopen the Action. (D.E. 50). On September 6, 2018, the Court entered an Order reopening the Action and entering a new scheduling order. (D.E. 51). And on September 10, 2018, the Court denied the Plaintiff's Motion for Remand and ordered the Defendants to respond to Plaintiff's Complaint. (D.E. 52).

On October 2, 2018, Defendants moved to dismiss or strike Plaintiff's nationwide class allegations on the basis that this Court could not exercise personal jurisdiction over the claims of the out-of-state putative class members as they related to the Defendants under the U.S. Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San. Fran. Cty.*, 137 S. Ct. 1773 (2017). (D.E. 60) In addition, Defendants moved to stay the Action pending an interpretive rulemaking procedure by the Federal Communications Commission, which Defendants contended would be forthcoming, concerning one of the elements of Plaintiff's case-in-chief. (D.E. 61). On

October 22, 2018, Plaintiff responded in opposition to both Defendants' motions to dismiss and stay the Action. (D.E. 66, 67). On November 5, 2018, Defendants filed replies in further support of their motions. (D.E. 68, 69).

During this time, the Parties continued to explore settlement and on November 11, 2018, they attended a second full day mediation in Miami, Florida before Jill Sperber, Esq., who is a neutral affiliated with Judicate West and who has substantial experience mediating consumer class actions, including class actions alleging violations of the TCPA ("Miami Mediation"). Just like the Chicago Mediation, the Miami Mediation was contentious, hard fought, and lasted well into the evening. Again, the Parties ended the day without a settlement. In the days following the Miami Mediation, and with the continued help of Ms. Sperber, the Parties finally agreed on the material terms of a class action settlement. On December 5, 2018, the Parties executed a binding term sheet and filed a Joint Notice of Class Action Settlement. (D.E.70).

Defendants at all times have denied and continue to deny any wrongdoing and have denied and continue to deny that any of them committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the Action and vowed to oppose certification of a litigation class.  Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendants concluded it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement.  Plaintiff believes that the claims asserted in the Action against Defendants have merit and that he would have prevailed at summary judgment and/or trial.  Nonetheless, Plaintiff and Class Counsel recognize that Defendants raised factual and legal defenses that present a risk that Plaintiff may not prevail.  Plaintiff and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against Defendants through class certification,

5

summary judgment, trial, and any subsequent appeals. Plaintiff and Class Counsel have also taken into account the uncertain outcome and risks of litigation, especially in complex class actions such as this, as well as the difficulties inherent in such litigation. Therefore, Plaintiff believes it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice. Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

### III. SETTLEMENT TERMS

The Parties propose to certify the following Settlement Class:

> **All Persons who received one or more text messages sent by or on behalf of Defendant MASN to a cellular phone between December 12, 2013 and the date the Class Action Settlement Agreement is preliminarily approved.**

Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a valid and timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

#### a. Monetary Settlement Relief

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides to Settlement Class Members. The Settlement Agreement allows the Settlement Class Members to look to a Settlement Fund of up to $2,500,000 for settlement and satisfaction of their claims.

The first $1,500,000 of the Settlement Fund is entirely non-reversionary, meaning that no part of it can revert to Defendants under any circumstance. In addition, to the extent that the total amount of Approved Claims multiplied by $75 exceeds $1,500,000, the Settlement Fund will be increased upwards so that it equals the total amount of Approved Claims multiplied by $75 up to the total amount of the Settlement Fund, i.e., $2,500,000.00. The total Settlement Fund, as calculated above, will be used to pay all administration expenses and fees and will then be apportioned among the Settlement Class Members on a pro rata basis.

To receive a Cash Award under the terms and conditions of the Settlement, a Settlement Class Member must, among other things, truthfully, accurately, and completely fill out and sign the Claim Form, attesting to their receipt of a text message, and either submit the Claim Form on the Settlement Website or mail the Claim Form, with first class postage prepaid, to the Settlement Administrator, postmarked on or before the Claims Submission Deadline.

The amount of a Settlement Class Member's Cash Award depends on the number of Persons who submit valid Claim Forms and the amounts deducted from the Settlement Fund for notice and class action administration, attorneys' fees and expenses, and service awards.

The claims process and Claim Form will be as least burdensome and time consuming as possible. Moreover, the Claims Form will present objective criteria that Settlement Class Members may fairly satisfy to receive relief.

    **b. Injunctive Settlement Relief**

In addition to the substantial monetary relief that the Settlement provides, additional core relief includes changes to MASN's business practice of sending marketing text messages to consumers. Indeed, as a current benefit, MASN represented that it has already halted its text message marketing program. MASN further agrees that before engaging in any new text message

marketing program, that it will implement a training program and institute compliance protocols to ensure compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* These training programs and compliance protocols will train relevant personnel on both legal compliance and how to maintain best practices.

### c. Class Notice and Claims Administration

Furthermore, the Settlement Agreement requires Court appointment of a reputable Class Action Administrator, the dissemination of best practicable notice, a transparent settlement administration process, a Settlement website, a toll-free information line with taped frequently asked questions and a voicemail box, a centralized post-office box to correspond with Settlement Class Members, and a detailed process for administering Claims Payments for Settlement Class Members. The Parties solicited and received several estimates from nationally recognized claims administrators with substantial experience in class action settlements. Following review of the various proposals, the Parties have identified a claims administrator whom they believe is best suited to serve as the administrator in this particular matter. To this end, the Parties seek this Court's approval to retain Angeion Group, 1650 Arch Street, Philadelphia PA 19103 to serve as the class action settlement claims administrator. A copy of the Declaration of Angeion Group's representative attesting to Angeion Group's qualifications is submitted herewith as **Exhibit B.**

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the

Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement; and other important documents.

The costs associated with dissemination of the Class Notice and administration of the Settlement will be paid from the Settlement Fund, subject to the Court's approval.

Finally, the Defendants are required to comply with the notice provisions of the Class Action Fairness Act of 2005, 28 U.S.C. §1715, *et seq.*

By this Motion, the Parties seek this Court's approval of the following proposed Notices which are attached hereto: (i) Individual Notice Via U.S. Mail (**Exhibit C**); (ii) Email Notice (**Exhibit D**), and; (iii) Settlement Website Notice (**Exhibit E**).

### d. Objectors and Opt-Outs

To the extent that any Settlement Class Members object to the Settlement, the Parties ask the Court to adopt the deadlines and procedures for objectors set forth in the proposed Class Notice to ensure that that all interested persons are afforded a reasonable opportunity to be heard and that the Final Approval Hearing may be conducted in an orderly, efficient, and just manner. First, the proposed Settlement provides a procedure for any Settlement Class Member who wishes to opt-out of the Settlement. Moreover, any Settlement Class Member or governmental entity that wishes to object to the proposed Settlement must do so by filing a timely written statement, containing all information required by the proposed Class Notice, with the Court on or before Objection/Exclusion Deadline. Second, any attorney or Settlement Class Member who intends to appear or speak at the Final Approval Hearing must enter a written notice of appearance with the Court on or before the Objection/Exclusion Deadline. To be timely, requests for exclusion must be postmarked no later than the Objection/Exclusion Deadline, and simply state the Settlement Class Member's intention to exclude themselves from the Settlement.

An objection must be submitted timely and contain at least the following: (1) a heading that refers to the Action by case name and number; (2) a statement whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number; and (3) a statement of the specific legal and factual basis for each objection.

The Settlement Agreement also provides for the Court's Preliminary Approval Order to contain a temporary injunction enjoining other proceedings relating to the Released Claims in order to preserve the status quo pending the Court's final decision on the reasonableness and fairness of the Settlement.

### e. Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class members have agreed to the release defined in the Agreement.

## IV. THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS, MEETS ALL RULE 23(e) REQUIREMENTS AND WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the Court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). "[I]n analyzing any settlement, 'the clear policy in favor of encouraging settlements must . . . be taken into account.'" *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citation omitted); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (same); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)[3] (same). Moreover, "[i]n evaluating a settlement's fairness, it

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

should [not] be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained." *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (internal quotations omitted); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (same).

"Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-c-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citations omitted). In the first step, the Court determines whether the proposed settlement should be preliminarily approved. *See* David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004). In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the court makes a final decision whether the settlement should be finally approved. *See id*. §§ 21.633-35.

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (citations omitted). At the preliminary approval stage, the court makes the preliminary determination whether the proposed settlement is within the range of fairness, reasonableness, and adequacy so as to justify notice to the class of the settlement, and the setting of a final fairness hearing to decide whether the proposal is indeed fair, reasonable, and adequate in the ultimate sense. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 Herbert N. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, §11.25 (4th ed. 2002); *Fresco v. Auto Data Direct, Inc.*, No. 03- 61063, 2007 U.S. Dis. LEXIS 37863, at *11-12 (S.D. Fla. May 11, 2007); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.

11

1984) (a proposed settlement must be "fair, adequate and reasonable and [not] the product of collusion between the parties.").

Here, the proposed Settlement Agreement is within the range of reasonableness and warrants its notice to Settlement Class Members.

### a. The Proposed Notice and Class Administration Protocols Warrant Providing Notice to the Class

As set forth above, the proposed notice and class administration protocols are designed to provide the best notice practicable. Through a combination of direct mail, email, website interaction, and a targeted digital media program, the proposed notice protocol provides clear and concise information about the settlement terms, class members' rights, and is designed to reach as many members of the settlement class as possible.

### b. The Settlement Provides Substantial Relief

"[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Beherens v. Wometco Enterprises, Inc.*, 18 F.R.D. 534, 542 (S.D. Fla. 1988). This Settlement meets a critical test in gauging its fairness and reasonableness because it provides significant, concrete relief to affected class members and directly remedies the injury alleged in the Action. The gravamen of Plaintiff's Complaint was that he and the Settlement Class Members received text messages from Defendants without their consent and thus entitled to compensation under the TCPA. Accordingly, the Settlement creates $2,500,000 Settlement Fund to compensate Settlement Class Members who are allegedly entitled to compensation under the TCPA. Settlement Class Members will be able to receive payment by submitting a simple Claim Form either by hard copy or online. The Settlement thus directly addresses the claimed harm.

12

In fact, the Settlement does more than provide the Settlement Class Members with immediate monetary relief. MASN, the Defendant Plaintiff alleges was responsible for sending the alleged text messages, has represented that its text message marketing program has already been discontinued. Additionally, this Settlement is contingent on Defendant's agreement that any future text messaging campaigns it initiates will be fully compliant with the TCPA, follow best practices, and be instituted only after appropriate training protocols have been instituted.

### c. The Settlement Provides Immediate Relief to 211,000 Class Members

That this Settlement would eliminate the delay and expenses of litigation also strongly weighs in favor of approval. *See, e.g.*, *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably because it "avoids the costs, delays and multitudes of other problems associated with them." *Id*. at 1013. "[C]lass action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the mere possibility of relief in the future, after protracted and extensive litigation. In this respect, [as this Court has observed] '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Borcea v. Carnival Corp*., 238 F.R.D. 664, 674 (S.D. Fla. 2006) (citation omitted).

Absent a settlement, the final resolution of this litigation through the trial process will likely require several years of protracted adversarial litigation and appeals, which will delay relief to the 211,000 Settlement Class Members. The proof necessary to prevail at trial in this case will be far greater than what is required under the Settlement. Settlement Class Members may receive immediate economic relief under the Settlement without any documentation whatsoever other than a simple Claim Form. It is clearly advantageous for Settlement Class Members to be eligible to

obtain this significant financial relief without further delay or extensive proof. By reaching this Settlement, the Parties will avoid further protracted litigation and will establish a means for prompt, streamlined resolution of Settlement Class Members' claims against Defendants with relaxed burdens of proof. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the potential evidentiary issues, and the possibility of further appellate review, the availability of prompt relief under the Settlement is highly beneficial to Settlement Class Members.

### d.  The Settlement is a Product of Well-Informed, Arm's Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are most knowledgeable with this class action litigation and with the legal and factual issues of this Action. Furthermore, Class Counsel are experienced in the litigation, certification, trial, and settlement of nationwide class action cases and zealously represented the Plaintiff throughout this litigation.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and have an intimate familiarity with the facts of the Action. Class Counsel received class discovery as part of the mediation process, and this enabled them to gain a better understanding of the marketing program at issue.  Class Counsel also

conducted a thorough analysis of Plaintiff's claims and conducted an extensive investigation into Defendants' alleged conduct.

### e. Complexity, Expense, and Duration of Litigation

The traditional means for handling claims like those at issue here tax the court system, require massive expenditures of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they claim entitlement in a prompt and efficient manner.

## V. THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

### a. The Requirements of Fed. R. Civ. P. 23(a)(1)-(4) Are Satisfied

Certification under Fed. R. Civ. P. 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

1. Numerosity

The numerosity requirement of Fed. R. Civ. P. 23(a) is satisfied because the Settlement Class consists of approximately 211,000 individuals residing throughout the United States and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendants' text marketing – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

3. Typicality

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members such that the Fed. R. Civ. P. 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of the absent Settlement Class members because he received the

same or similar text messages and suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

### 4. Adequacy of Representation

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Fed. R. Civ. P. 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The focus is on "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action. Class Counsel's Resume is submitted herewith as **Exhibit F.** Declarations of Class Counsel is submitted herewith as **Exhibit G**.

### b. The Requirements of Fed. R. Civ. P. 23(b)(3) Are Satisfied

Under Fed. R. Civ. P.23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

1. Common Questions Predominate

Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member.

2. Class Treatment of Plaintiff's Claims is Superior

Finally, resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

## VI. THE PROPOSED NOTICE WILL AFFORD SETTLEMENT CLASS MEMBERS WITH AMPLE DUE PROCESS

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice satisfies all of these criteria. As recited in the Settlement and above, the proposed Notice program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the

Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice is designed to reach the highest percentage of Settlement Class members as practicable and far exceeds the requirements of Constitutional Due Process.

## VII. PROPOSED SCHEDULE

In connection with the preliminary approval of the Settlement, the Court should set a date and time for the Final Approval Hearing, as well as other deadlines relevant to the Claim submission progress. Class Counsel propose the following schedule:

| Event | Timeline |
|---|---|
| Deadline for Completion of Notice | 35 days after entry of the Preliminary Approval Order |
| Deadline for filing Motion for Final Approval of the Settlement | 14 days before Final Approval Hearing |
| Deadline For Counsel's Fee Application and expenses and for Service Award | 45 Days Prior to the Final Approval Hearing |
| Deadline for opting-out of the Settlement and for submission of Objections | 30 days before Final Approval Hearing |
| Deadline for Responses to Objections | 10 days before the Final Approval Hearing |
| Final Approval Hearing | 90 days after Preliminary Approval |
| Last day Class Claimants may submit a Claim Form | 60 days after the Final Approval Hearing |

## VIII. CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) preliminarily approve the Settlement; (2) certify the proposed Settlement Class for settlement purposes; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form as attached to the Settlement Agreement; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) adopt the proposed schedule above; (6) appoint Sebastian Gonzalez as Class Representative; (7) appoint Ruben

Conitzer and David Milian of Carey Rodriguez Milian Gonya, LLP as Class Counsel; and (8) schedule a Final Approval Hearing. A Proposed Preliminary Approval Order is submitted herewith as **Exhibit H**.

February 5, 2019                                   Respectfully submitted,

**CAREY RODRIGUEZ
MILIAN GONYA LLP**
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475

*By: /s/ David P. Milian*
David P. Milian (Fla. Bar No. 844421)
Email: dmilian@careyrodriguez.com
Secondary: ecf@careyrodriguez.com
David M. Levine (Fla. Bar No. 84431)
Email: dlevine@careyrodriguez.com
Secondary: cperez@careyrodriguez.com
Ruben Conitzer (Fla. Bar No. 100907)
Email: rconitzer@careyrodriguez.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing was filed with the Clerk of the Court and served upon counsel of record included on the service list below via CM/ECF and served on February 5, 2019.

*By: /s/ David P. Milian*
David P. Milian (Fla. Bar No. 844421)

**Service List**

| | |
|---|---|
| **GREENBERG TRAURIG, P.A.** | **GREENBERG TRAURIG, LLP** |
| 333 SE 2nd Avenue | 1840 Century Park E, Suite 1900 |
| Miami, FL 33131 | Los Angeles, CA 90067 |
| David A. Coulson | Robert J. Herrington *Admitted Pro Hac Vice* |
| coulsond@gtlaw.com | herringtonr@gtlaw.com |
| Ian M. Ross | *Counsel for Defendant* |
| ross@gtlaw.com | *TCR Sports Broadcasting Holding, LLP* |