## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-CV-20048-DPG

SEBASTIAN GONZALEZ,

    *Plaintiff*,

v.

TCR SPORTS BROADCASTING HOLDING, LLP d/b/a Mid-Atlantic Sports Network, HYUNDAI MOTOR AMERICA, INC., and MERCEDES-BENZ USA, LLC,

    *Defendants*.

_____/

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Sebastian Gonzalez, on behalf of the Settlement Class, moves for final approval of the Settlement Agreement with Defendant TCR Sports Broadcasting Holding, LLP d/b/a Mid-Atlantic Sports Network ("MASN") and for entry of a final Order and Judgment. The Court preliminarily approved the Settlement on February 14, 2019. (ECF No. 79). A copy of the Settlement Agreement is attached as **Exhibit A**.[1]

The Settlement creates a $2,500,000 million Settlement Fund that will be used to satisfy the claims of approximately 211,000 Settlement Class Members. Further, as a direct result of this lawsuit, MASN brought its text messaging marketing practices into compliance.

In granting preliminary approval, the Court found that the Settlement was within the range of reasonableness and that the Settlement Class should be given notice. (ECF No. 79 at 2). Nothing

---

[1] Unless otherwise noted, all capitalized terms have the same meaning as ascribed to them in the Settlement Agreement.

has changed to alter this finding. To the contrary, the notice and claims program is underway, and the Settlement Class is being fully informed of its rights under the Settlement Agreement in a manner consistent with both Fed. R. Civ. P. 23 and as required by due process. Thus, for the reasons set forth herein as well as those in the Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative's Service Award (ECF No. 81), Plaintiff respectfully requests that this Court finally approve the Settlement Agreement, certify the Settlement Class, declare the terms of the Settlement to be fair, reasonable, and adequate, and that it enter a Final Order and Judgment.

## I.  INTRODUCTION

The compromise of complex class action litigation is encouraged by the courts and favored by public policy, especially where, as here, there is significant value to affected class members. *See In re Checking Account Overdraft Litigation*, 2011 WL 5873389, 6 (S.D. Fla. 2011) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."); 4 Newberg on Class Actions § 11:41 (4th ed.).

The cornerstone of the Agreement here is the $2.5 million ($2,500,000) Settlement Fund, which will be used to pay Approved Claims filed by Settlement Class Members after deducting the court-approved costs of notice, administration, service awards and reasonable attorneys' fees. The Settlement further requires MASN to institute telephone marketing compliance training for key marketing managers who oversee the MASN's text marketing program, thereby helping to prevent any future violations from occurring going forward. This relief is substantial, concrete and equitable.

Absent a settlement, the resolution of this litigation through the trial process would likely have entailed many more years of protracted adversary litigation and appeals, which would have substantially delayed relief to Settlement Class Members. Moreover, the Settlement avoids

incremental litigation of these claims on an individual basis. Considering the extensive monetary and non-monetary benefits under the Settlement, the Court should determine that it is fair and reasonable and merits final approval.

## II. SUMMARY OF THE LITIGATION, TWO MEDIATION SESSIONS, SETTTLEMENT AND NOTICE PROGRAM

Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* ("TCPA") "to protect the privacy interests of … telephone subscribers by placing restrictions on unsolicited, automated telephone calls." S. Rep. No. 102-178, 1 (1991). The Senate Committee on Commerce, Science, and Transportation "believe[d] that Federal legislation [wa]s necessary to protect the public from automated calls [because t]hese calls can be an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services." *Id.* at 5.

To help fight unwanted automated telephonic communications, Congress permitted members of the public to privately enforce the TCPA by way of a private right of action which permits recovery of $500 per violative communication. And when the Plaintiff began receiving unwanted advertisements from MASN, this is precisely what he did. MASN began sending the Plaintiff text messages promoting, *inter alia*, Hyundai and Mercedes, even though he only agreed to receive purely informational sports updates for the Washington Nationals and the Baltimore Orioles (baseball teams for whom MASN has broadcasting rights). In light of what the Plaintiff considered "bait and switch" marketing tactics, he brought this Action.

Before filing suit, however, Class Counsel spent substantial time studying MASN's marketing tactics, including assessing data from on-air sources, the internet, and social media. Only after becoming confident of the Plaintiff's potential claims did Class Counsel file suit.

3

Indeed, Class Counsel's extensive pre-suit investigations permitted it to exert substantial leverage over MASN from the outset of the case.

And from the time that the Plaintiff did initiate suit, the parties pursued their opposing positions comprehensively and zealously. Initially, the Plaintiff filed this Action in Florida state court. (ECF No. 1, Ex. A). MASN removed it to the District Court for the Southern District of Florida. *Id*. Based on what Plaintiff perceived to be procedural defects in removal, Plaintiff moved to remand this Action to state court. (ECF No. 22).

Plaintiff's bid for remand was intensely briefed with the Plaintiff's initial motion, a response, and a reply. (ECF No.'s 22, 27, 28). Ultimately, the Court denied the Plaintiff's motion for remand and ordered Defendants[2] to respond to the Complaint. (ECF No. 52).

The Defendants responded to the Complaint by seeking to dismiss or strike Plaintiff's nationwide class allegations. (ECF No. 60). Defendants based their response on the U.S. Supreme Court's recent pronouncement in *Bristol-Myers Squibb Co. v. Sup. Ct. Cal.*, 137 S. Ct. 1773 (2017), that a court may not exercise specific jurisdiction over a nonresident defendant for claims brought by a nonresident plaintiff (unless there is a sufficient nexus between the defendant's contacts with the forum and the nonresident plaintiff's claims). In response , Plaintiff surveyed the district courts' interpretation on *Bristol-Myers*, and argued in detail that its holding is inapplicable to class actions asserting purely federal statutory claims where absent class members, by definition, are not joined as parties to the litigation and that such a holding has never been reached by this Court. (ECF No. 66). While conceding that no Court in this District has applied *Bristol-Myers* in

---

[2]   In addition to MASN, the initial Defendants also included Hyundai Motor America, Inc., Mercedes-Benz USA, LLC, and Jiffy Lube International, Inc.

the manner they sought, Defendants nonetheless argued the better judicial analysis supported such an outcome. (ECF No. 69). In light of the Settlement , Defendants' motion is now moot.

In addition to pitched battles over the potential scope of the class, the parties also extensively litigated whether this case should be permitted to proceed. Defendants immediately moved to stay this case pending the outcome of the D.C. Circuit's decision in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). (ECF NO. 14). After an opinion was issued in *ACA Int'l* on March 16, 2018, the FCC notified the public that it was studying the opinion, considering new guidance, and that it sought public comment related thereto. *See* Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's *ACA International* Decision, 83 Fed. Reg. 26284-86 (June 6, 2018). On the basis of pending FCC's rulemaking, Defendants moved, for a second time, to stay this case. (ECF No. 61). Defendants' motion posed the risk of further and indefinite delay to Plaintiff and the Settlement Class. It was heavily contested with Plaintiff citing to numerous decisions by other courts where similar stay requests were denied. (ECF No. 67). Defendants, however, claimed that new FCC guidance would be instructive, would narrow the definition of an ATDS, and was worth waiting for. (ECF No. 68). Ultimately, this case settled at mediation before this Court ruled on the motion or the FCC issued new guidance.

From the outset of this Action, the parties engaged in direct communications and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution. And because the parties took this obligation seriously, this case reached Settlement through mediation and relieved the Court of the need to rule on all pending motions.  But resolution was not easy. The parties engaged in two formal mediation sessions with two highly respected and experienced mediators.

The first mediation took place on July 17, 2018, before (Ret.) U.S. District Judge Wayne R. Andersen (of the U.S. District Court for the Northern District of Illinois), who is a neutral affiliated with JAMS Chicago and has substantial experience mediating consumer class actions, including class actions alleging violation of the TCPA. The mediation session lasted a full day. While the parties engaged in good faith negotiations, which at all times were at arms' length, they failed to reach an agreement. Notwithstanding their failure to settle at that time, the Chicago mediation permitted the opportunity for the parties to better assess the strengths and weaknesses of their positions and to more fully identify the likely dispositive issues in the Action.

Then, on November 11, 2018, the parties attended mediation in Miami, Florida. The second full day mediation was held before Jill Sperber, Esq., a respected neutral affiliated with Judicate West who also has substantial experience mediating consumer class actions. Just like the previous mediation, it was contentious, hard fought, and this time lasted well into the evening. Again, the parties ended the day without settling. In the days following the second mediation, and with the continued help of Ms. Sperber, the parties finally agreed on the material terms of a class action settlement. On December 5, 2018, the parties executed a binding term sheet and filed a Joint Notice of Class Action Settlement. (ECF No. 70).

On February 5, 2019, the Plaintiff moved for preliminary approval of the Settlement Agreement, *see* ECF No. 76, which the Court granted shortly thereafter. (ECF No. 79).

After the Settlement was preliminarily approved, Angeion Group, the Court appointed Class administrator, began to actively identify Settlement Class Members and to notify them of their rights under the Settlement. (ECF No. 79, at ¶ 13). Angeion's efforts to identify as many Settlement Class Members as possible has included, to date, the following: identifying mail and email addresses for Settlement Class Members and inform them of the Settlement; waging a media

6

campaign; setting up a case specific website with relevant case documents and online claims forms; setting up a toll free hotline to respond to Settlement Class Members' questions and concerns, in addition, Angeion has informed all attorneys general of the Settlement under requirements imposed by the Class Action Fairness Act, 28 U.S.C. § 1715(b), and will process all claims forms to ensure the Settlement Class Members receive their pro rata portions of the Settlement Fund.

### III.   THE NOTICE PROVIDED TO THE CLASS MEMBERS CONFORMS WITH BEST PRACTICES

To satisfy Rule 23, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *U.S. v. Alabama*, 271 Fed. Appx. 896, 901 (11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314 (11th Cir. 2009) ("Notice must be 'reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action and afford them the opportunity to present their objections.'") (*abrog. on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)),

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations and citation omitted). Moreover, neither Rule 23 nor due process requires that class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012); *see also* PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.04, cmt. a ("In many cases, personal notice may not make economic sense.").

The notice plan approved by the Court here constitutes "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In approving the notice plan, the Court found:

> The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

(ECF No. 87 at ¶ 12).

As of the filing of this Motion, Angeion Group, the Court Settlement Administrator, continues to work diligently to implement and execute the Court's Notice plan. It sent direct notice to each Settlement Class Member for which it obtained a valid email or postal mailing address. Decl. Steven R. Platt at ¶¶ 7-11, attached as **Exhibit B**. The direct notice summarized the claim, explained the amount of the Settlement and how claim amounts would be calculated, stated that incentive awards and fees would be sought, provided a toll-free number for questions, and directed Settlement Class Members to the Settlement website. *Id.* at Ex. 3. The website enables Settlement Class Members to scrutinize the Settlement Agreement, its exhibits, the Court's preliminary approval order, the long form notice, and to file a claim or request that a claim form be mailed to them. *See* masntextmessagesettlement.com (last visited April 1, 2019); *see also* Decl. Platt at ¶¶ 14-16. The website also provides the toll-free number to reach Class Counsel and obtain additional information. *Id.* Finally, although direct-mail notice alone is sufficient to satisfy Rule 23 and due

process, Angeion Group has also implemented a program of predictive targeted online banner ads that contain a link directing potential Settlement Class members to the settlement website. Decl. Platt at ¶¶ 12-13.

In short, the notice program complies with the court approved plan, surpasses both Rule 23 and due process mandates, and will fully apprise the Settlement Class Members of the material terms of the Settlement and their rights thereunder.

## IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial and public policy favor the voluntary settlement of class litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988) ("settlements are highly favored in the law."). With a settlement, class members are ensured a benefit as opposed to "the mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

A settlement should be approved if it is fair, reasonable, and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In determining this, deference should be given to the decision of the parties. *See Warren*, 693 F.Supp. at 1060 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Also, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001) (citation omitted). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at

>which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986.

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). That is the case here, as the Settlement Agreement is the result of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, and satisfies each of the *Bennett* factors.

### a. The Settlement Agreement is the Result of Arm's Length Negotiations

This case was anything but a "file and settle case." *See David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. 2010). The context in which the Settlement Agreement was reached confirms it was the product of arm's length and informed negotiations between adverse parties. The Settlement Agreement was only reached after, *inter alia*, extensive briefing and a ruling on Plaintiff's motion for remand, fully briefing Defendants' numerous motions to stay, Plaintiff's disclosure of widespread pre-suit evidence gathering, extensive negotiations, two full day mediation sessions before highly qualified neutral mediators, and confirmatory discovery taken from MASN's Rule 30(b)(6) representative regarding the size and scope of the Settlement Class. These extensive efforts provided Class Counsel with sufficient information about the value of the case, including Settlement Class size, and their ultimate chance at success and enabled them to evaluate the terms of any proposed agreement and to ensure a fair compromise.

In particular, the fact that a Settlement was reached only after two full day in-person mediation sessions with experienced neutrals demonstrate the absence of collusion. *See Ingram v.*

10

*The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Acct. Overdraft Litig.*, 830 F.Supp. 2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator).

This Settlement is the result of arms' length and informed negotiations and it should be finally approved.

### b. The Settlement Agreement Satisfies all the *Bennett* Factors

In addition to being the product of arm's length negotiations, the Settlement Agreement meets each of the Eleventh Circuit's *Bennett* factors. It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id*. Here, each factor weighs in favor of granting final approval.

#### 1. Likelihood of Success on the Merits

First, "[t]he likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Lipuma*, 406 F.Supp. 2d at 1319. Where success at trial is uncertain, this factor weights in favor of approving the settlement. *See Newman v. Sun Capital, Inc.*, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012).

The Plaintiff's chance of success at trial here is balanced by the risk that this case would have been subject to an indefinite stay pending ruling by the FCC on the proper definition of an "ATDS." And regardless of whether this case was stayed, the risk that the FCC could issue a

restrictive definition of an ATDS was very real, especially given prior comments from certain members whose views appear to represent the majority vote of that agency.

Plus, there is no guarantee the Court would certify the class if certification was contested. In addition, class certification could have been severely limited under Defendants' argument on the application of *Bristol-Myers Squibb*, discussed *supra*. Finally, even if Plaintiff were to succeed at trial in all regards, Defendants would surely have sought appellate review.

Against these substantial hurdles and uncertainties, the Settlement guarantees substantial and instant cash and injunctive relief. *See Gevaerts v. TD Bank*, 2015 WL 6751061, at *13 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit"). When the strengths of Plaintiff's claims are weighed against the legal and factual obstacles the Settlement Class faces, the complexity of class action practice, there is no doubt that the Settlement is in the Settlement Class' best interest.

2. **Range of Possible Recovery and Point where an Agreement is Fair, Reasonable, and Adequate**

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *See In re Sunbeam*, 176 F.Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F.Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F.Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id*.

First, the immediate financial relief secured for the Settlement Class is substantial. Under the Settlement, MASN agreed to establish a $2.5 million Settlement Fund to be used to compensate Settlement Class Members. The Settlement further requires that MASN come into compliance with the TCPA, which it represents it has done.

Second, the Settlement makes relief obtainable through submission of a simple Court-approved claim form in a streamlined process through which Settlement Class Members have a far lesser burden and standard of proof than would be required in a court proceeding. Unlike a federal court trial, this claims process is not subject to the myriad of requirements otherwise imposed by the Federal Rules of Civil Procedure or Evidence. Indeed, the agreed claims process exists to satisfy the claims of any and all Settlement Class Members who simply submit a qualifying claim, which is straightforward and easy to do.

Class Counsel reasonably concluded that this claims process is appropriate. The Settlement Class Members can enter information on the Settlement website and download a customized claim form and a toll-free assistance number appears in the mailed notice, the claim form, and online to facilitate claim submissions.

The result here is plainly reasonable and easily surpasses potential per class member benefits conferred in many other TCPA class action settlements that were finally approved.

    3. **The Complexity and Expense of Further Litigation**

The Court also looks to the complexity of the litigation and the expense of further litigation. Under this factor, the Court "consider[s] the vagaries of litigation and compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F.Supp. 2d at 1323. "The law favors

compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F.Supp. 2d at 1381.

This factor favors approval because the expense and complexity of further litigation would be substantial and require extensive discovery, the briefing of Plaintiff's motion for class certification, expert reports and discovery, *Daubert* motions, extensive trial preparation, trial, post-trial motion practice, and appeal. Moreover, continued litigation would delay the case's resolution, impose additional substantial expense on both sides, and consume valuable judicial resources. In these circumstances, it is "proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

Still, even if there were no risks in pressing this litigation forward, the Settlement Class Members surely would not have recovered anything if they simply pressed blindly ahead for the maximum possible recovery the law permits. Indeed, bankruptcy is not the preferred outcome in class action practice.

The Settlement reached by Class Counsel ensures that the Settlement Class will receive fair, adequate, reasonable, and meaningful relief. It is an excellent result by any measure.

### 4. **Stage of Proceedings where Settlement Reached**

The settlement in this case was reached only after substantial briefing and two separate full day mediation sessions before experienced neutrals. In addition, Class Counsel obtained discovery to verify the total amount of Settlement Class Members and that MASN would be able to provide their phone numbers to Angeion Group, the Class administrator.

While the parties here didn't wait until the eve of trial to settle, that's not a bad thing. To the contrary, "[e]arly settlements are favored." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014). Moreover, "vast formal discovery need not be taken." *Id.* (citing *Lipuma* at 1324).

Here, "the Settlement was achieved [relatively] early in the litigation, but not so early that Class Counsel did not have information with which to negotiate," and this factor supports approval of the Settlement Agreement. *Perez v. Asurion Corp,*, 501 F.Supp.2d 1360, 1383 (S.D. Fla. 2007).; *see also Preman v. Pollo Operations, Inc.*, 2018 WL 3151673, at *10 (M.D. Fla. Apr. 12, 2018) ("While the parties reached settlement at an early stage of the proceedings, their settlement was the result of 'intensive arms-length negotiations between experienced attorneys who are familiar with class action litigation.") (citations to record omitted).

### 5. **Substance and Amount of Opposition to Agreement**

As of yet, there have been no objections to the Settlement Agreement. Admittedly, it is early in the claims process and Class Counsel will inform the Court of any opposition and the basis therefor before the Final Fairness Hearing.

### V. CONCLUSION

In summary, the Settlement yields a great result to the Settlement Class, provides instant cash benefits, as well as injunctive relief. In addition, the Settlement is the product of extensive fact-seeking by the Plaintiff, contentious litigation and arms' length negotiations before two experienced mediators. The Settlement satisfies all the *Bennett* factors. The Court already ruled that the Settlement is within the range of reasonableness and nothing has changed to disturb that conclusion. The Plaintiff requests an order conclusively approving the Settlement and, as more fully set forth in Class Counsel's Motion for Attorneys' Fees, Costs, and Class Representative's

Service Award (ECF No. 81), awarding the Plaintiff a $10,000 incentive award, awarding Class Counsel $833,333.33 for reasonable attorneys' fees and $28,830.57 in necessary and reasonable costs and expenses actually incurred in the litigation.

<u>April 1, 2019</u>  Respectfully submitted,

          *By: /s/ Ruben Conitzer*
David P. Milian (Fla. Bar No. 844421)
Email: dmilian@careyrodriguez.com
Secondary: ecf@careyrodriguez.com
Ruben Conitzer (Fla. Bar No. 100907)
Email: rconitzer@careyrodriguez.com
Secondary: cperez@careyrodriguez.com
CAREY RODRIGUEZ MILIAN GONYA LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475